408 So.2d 911 (1981)
STATE of Louisiana
v.
Jimmy Lee HERNANDEZ.
No. 81-K-1669.
Supreme Court of Louisiana.
December 14, 1981.
Rehearing Denied February 5, 1982.
*912 R. Perry Pringle, of Pringle & Herzog, Shreveport, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James L. Davis, Dist. Atty., Abbott J. Reeves, Herman Lawson, Asst. Dist. Attys., for plaintiff-respondent.
LEMMON, Justice.
This court granted defendant's pretrial application for supervisory writs to determine the correctness of the trial court's denial of defendant's motion to suppress. La.Const. Art. V, § 5 (1974).

I.
On February 6, 1981 at about 5:30 a. m. Deputy Robert Davidson of the DeSoto Parish Sheriff's Office received a telephone call at his home from an informant. The informant told Deputy Davidson that defendant was bringing some marijuana to sell to the informant that day at the Brown and Root construction site where defendant and the informant were both employed. The informant further stated that defendant had given instructions to bring money to work that day because defendant was going to have marijuana available for sale. The vehicle which defendant would be driving was described by the informant as a black Chevrolet truck bearing license number T600-568. The informant further advised that defendant usually arrived for work at the construction site between 6:30 and 7:00 in the morning and that the marijuana would be somewhere under the seat of the truck.
The informant was known to the deputy and had provided accurate information to him on several prior occasions.[1] In order to intercept defendant the deputy acted immediately on the tip by having Deputy Melton pick him up and then driving 20 miles to the construction site. Upon arrival the two deputies advised Otis Miller, the chief of security, of their purpose and secured his assistance.
When defendant drove the described truck into the parking lot at the construction site, the three waiting men followed defendant to the spot where he parked and *913 intercepted him just as he and another man were getting out of the truck. The officers immediately identified themselves and advised defendant that they suspected the presence of marijuana in his truck. Defendant handed a large Playmate-type lunch box to the other occupant of the vehicle, but the deputies recovered the box and allowed the other man to go on to work. Over defendant's protest the deputies and the security chief searched his lunch box and truck. Deputy Davidson discovered a plastic Tupperware container in the cab of the truck behind the front seat, and the security chief removed it from the vehicle. He and Deputy Davidson then opened the plastic container and found eight "lids" of marijuana. The deputies thereafter advised defendant of his "Miranda." rights and placed him under arrest.

II.
The trial court properly determined that the warrantless search of the truck and seizure of the Tupperware box suspected of containing marijuana were not unreasonable under the Fourth Amendment or La.Const. Art. I, § 5 (1974). The warrantless search of the truck, leading to the discovery of the opaque Tupperware container, was manifestly reasonable under settled principles. Based on the detailed tip of a proven reliable informant who purported to have first-hand knowledge of the revealed facts, the officers clearly had probable cause to believe that the pickup truck would contain marijuana. This court stated the test for evaluating probable cause based on an informant's tip in State v. Jeffcoat, 403 So.2d 1227 (La.1981), as follows:
"The facts necessary to show probable cause may be established by hearsay evidence. Jones v. United States, 362 U.S. 257 [80 S.Ct. 725, 4 L.Ed.2d 697] (1960); State v. Paciera, 290 So.2d 681 (La.1974). The Supreme Court in Aguilar v. Texas, 378 U.S. 108 [84 S.Ct. 1509, 12 L.Ed.2d 723] (1964), laid down the test by which information given the affiant by an unidentified informant could be considered by the magistrate in determining if there was probable cause upon which a search warrant should issue. `[T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were there where he claimed they were and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed ... was "credible" or his information "reliable".' 378 U.S. at 114-115 [84 S.Ct. at 1513-14].
"A careful analysis of Aguilar reveals that its two-part test is designed to perform different functions. The first part is designed to insure that the informant obtained his information by personal observation, or in some other dependable manner rather than through mere rumor. This `basis of knowledge' test is a corollary of the Fourth Amendment's requirement that the magistrate, and not the police officer-affiant or his informant, shall weigh the facts and decide whether they establish probable cause. See Spinelli v. United States, 393 U.S. [410] at 424 [89 S.Ct. 584, at 593, 21 L.Ed.2d 637]; State v. Cann, 392 So.2d 381, 384 (concurring opinion); Moylan, Hearsay and Probable Cause: An Aguilar and Spinelli Primer, 25 Mercer L.Rev. 741, 751-752 (1974).
"The second prong of Aguilar's two-prong test is aimed at determining the veracity of the source of the hearsay information. Aguilar held that this test could be satisfied in either of two ways: (1) the affidavit may recite facts from which the magistrate could conclude that the informant is credible, or (2) it may recite facts from which the magistrate could conclude that the informant's information is credible. The `veracity prong' of Aguilar's two-part test is designed to perform the same function that the oath and the magistrate's direct observation serve in evaluating the truthfulness of the affiant. As the oath serves as a hedge against issuing an affidavit based on false allegations, so too does the requirement that there be included in the affidavit facts which indicate a reason for *914 believing in the veracity of the source of the information. Where the internal recitation about the informant or about the circumstances under which the information was furnished fails to establish that the informant was `credible' or that his information was otherwise `reliable', then the independent observations made by the officers-affiants themselves might be looked to by way of verification. See Spinelli v. United States, supra; State v. Paciera, supra; State v. Cann, supra, Moylan, supra, at 750-751." 403 So.2d at 1229-1230.
See also State v. Bible, 389 So.2d 42 (La. 1980), rev'd on other grounds, 406 So.2d 138 (La.1981) (No. 66,584); State v. Paciera, 290 So.2d 781 (La.1974).
Furthermore, the evidence established that the deputies reasonably decided to act immediately in order to intercept defendant and secure the marijuana before he had an opportunity to dispose of any of it. The officers did not know who had access to the truck or when defendant would remove the marijuana in order to make the sales. This case therefore does not present a situation in which the officers actively sought to create an emergency in order to avoid the initial scrutiny of their probable cause by a magistrate. See State v. Tant, 287 So.2d 458 (La.1973); State v. Nieto, 395 So.2d 733 (La.1981). There was nothing unreasonable about their decision to locate defendant and his truck immediately upon his arrival at the construction site and to preclude any opportunity for distributing drugs (as by bringing them with him in his lunch box) while they applied for a search warrant.[2]
We further note that this court, for purposes of the "automobile exception" to the search warrant requirement, has not distinguished between a vehicle stopped while in motion and then searched (obviously, a vehicle must first be stopped before it is searched) and a vehicle parked in a public place accessible to persons who might either move it or remove evidence from the vehicle. See State v. Lewis, 378 So.2d 396 (La. 1979); State v. Green, 404 So.2d 977 (La. 1981), Dennis, J., concurring. For constitutional purposes, given probable cause, it was reasonable for the officers to immediately search the inherently mobile conveyance rather than merely to immobilize it and then secure a warrant before searching it.[3] In Chambers v. Maroney, 399 U.S. 42, *915 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the Court rejected the contention that the warrantless immobilization or seizure of an automobile was a "lesser" intrusion than the immediate search of the immobilized movable. The Court stated that "given probable cause, either course is reasonable". The Court has also recognized that the diminished expectations of privacy in the automobile (as opposed to a home or a repository for personal effects such as a footlocker or suitcase) justifies the determination that warrantless searches of automobiles are reasonable when supported by probable cause. See United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). See also Belton v. New York, 453 U.S. ____, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Thus, we have no difficulty in concluding that the search leading to the discovery of the Tupperware container was lawfully conducted.

III.
The search of the Tupperware box presents a complex constitutional problem. While the officers had probable cause to believe marijuana would be found in the pickup truck, their tip did not focus on any particular type of container. The officers had been advised that the marijuana would probably be found under the seat, and the closed Tupperware container (designed to keep vegetable matter fresh) was certainly a likely spot.
Once the chief of security had the Tupperware box in his possession, the chances were highly unlikely that anyone could capture it from him and destroy its contents. Thus, here, as in Robbins v. California, 453 U.S. ____, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981) and Arkansas v. Sanders, above, officers had probable cause to believe that a closed container (whose contents could not be inferred from its outward appearance) located in a mobile vehicle contained contraband.
In Arkansas v. Sanders, above, the Court declared illegal the warrantless search of a suitcase taken from the trunk of a taxicab that had been legally stopped, despite the fact that the officers had probable cause to believe the suitcase contained marijuana. The Court refused to extend the rationale of the Carroll and Chambers cases to luggage being carried in the trunk of a vehicle.
In the Sanders case the officers had probable cause to believe that defendant would arrive at the Little Rock Airport with a green suitcase containing marijuana. They saw the defendant disembark from an aircraft carrying a green suitcase and leave in a taxi. They then stopped the taxi and seized and searched the suitcase. The Court found that "a suitcase taken from an automobile stopped on the highway is not necessarily attended by any lesser expectation of privacy than is associated with luggage taken from other locations". 442 U.S. at 764, 99 S.Ct. at 2593. Once the suitcase was immobilized and taken into police custody, the court found no justification or greater need for a warrantless search of luggage taken from an automobile than of luggage taken from any other location. See Chadwick v. United States, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).
In a concurring opinion in the Sanders case Chief Justice Burger opined that the decision did not bar the warrantless search of luggage located in a vehicle under all circumstances. The opinion noted, for example, the case in which officers have probable cause to believe that the contraband is located somewhere within a stopped vehicle, but do not know whether it is located in a piece of luggage, or in the glove compartment, or elsewhere in the car.
In Robbins a highway patrolman stopped a vehicle for a traffic infraction and detected the aroma of marijuana. After finding marijuana in the passenger compartment of the vehicle, the officer placed Robbins into his patrol car. He then proceeded to open *916 the tailgate of Robbins' station wagon and to search a recessed luggage compartment, where he found two packages wrapped in green opaque plastic. Unwrapping the packages, he discovered each to contain 15 pounds of marijuana.
The Court in Robbins ordered the marijuana suppressed. A plurality of the justices concluded that, despite probable cause, "such a container may not be opened without a warrant, even if found during the course of the lawful search of an automobile". 453 U.S. at ____, 101 S.Ct. at 2847. The plurality reasoned that the diminished expectation of privacy in the automobile generally did not extend to such closed containers (as long as the container did not have such a "distinctive configuration" as to "proclaim its contents"). Compare State v. Casillas, 393 So.2d 694 (1981).
Nevertheless, for several reasons we do not find Robbins to be controlling in the present case.
In the first place Robbins may best be characterized as a "container" case rather than an "automobile exception" case. In his concurring opinion in Robbins Justice Powell was willing to join the plurality by sharing the "assumption that the police had probable cause to search the container rather than the automobile generally". 101 S.Ct. at 2849. Chief Justice Burger, who also concurred in the result, had earlier in Sanders clearly distinguished "container" cases from "automobile" cases. The concurrences of Justice Powell[4] and Chief Justice Burger[5] were necessary to suppress the *917 evidence in Robbins, because Justices Blackmun, Stevens and Rehnquist dissented, believing the search immediately following the lawful seizure was reasonable and valid. Thus, it appears plain that future cases must be dealt with in these terms and classified as "container" cases or "automobile exception" cases.
In the "container" cases (those in which the officers have probable cause to search only a particular container, whether seized from a movable vehicle or elsewhere), the validity of the search of the container should be determined without reference to the coincidental fact that the container was seized while located in a movable vehicle. But in "automobile" cases (those in which the officers have probable cause to search the entire vehicle), the officers may search any portion of the automobile and any container, lawfully seized during the lawful search of the automobile, which is reasonably likely to contain contraband.
The present case clearly falls into the "automobile exception" cases. The informant's tip gave the deputies probable cause to search the pickup truck generally rather than to search any particular container that may have been found in the pickup truck or elsewhere after removal from the truck. Therefore, when one considers the views expressed in the dissenting opinions in Robbins combined with the "container" versus "automobile exception" reasoning expressed in the concurring opinions in Robbins and in Sanders, it is reasonable to conclude that five justices of the eight Robbins justices now on the Court would hold that the officers reasonably and validly opened the Tupperware container immediately after lawfully seizing it.
Another basis for distinguishing this case from Robbins is that the Robbins decision turned on a finding of high expectation of privacy. Any expectation of privacy as to closed containers of the sort searched in the present case was significantly diminished by the company policy, known and agreed to by defendant, which subjected all vehicles located in the parking lot and their contents to search by company security officers for the purpose of discovering controlled dangerous substances.[6] Although we are not prepared to treat this case as one in which defendant consented to the search, as in Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), we nevertheless emphasize that defendant was aware the chief of security might at any time examine his lunch box and other likely containers located within his vehicle for drugs (especially if, as here, the chief of security were to be alerted to the probable presence of such drugs by law enforcement officers). Under these circumstances defendant cannot reasonably be viewed as having "manifested an expectation that the contents would remain free from public examination". Robbins, 101 S.Ct. at 2846, quoting United States v. Chadwick, 433 U.S. at 11, 97 S.Ct. at 2483. Therefore, since the Robbins' decision emphasized a non-diminished expectation of privacy in the packages searched in that *918 case, we find the circumstances clearly distinguishable here.[7]
The ruling of the trial court denying defendant's motion to suppress is affirmed.
DENNIS, J., dissents with reasons.
CALOGERO, J., dissents and assigns reasons.
CALOGERO, Justice, dissenting.
I dissent from the majority opinion because I do not believe there were exigent circumstances present in this case justifying the warrantless search of defendant's truck.
It is well settled that a warrantless search is per se unreasonable and violative of the Fourth Amendment to the United States Constitution. Robbins v. California, ___ U.S. ___, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925). Although the United States Supreme Court has identified some exceptions to this warrant requirement, the Court has emphasized that these exceptions are "few", "specifically established" and "well-delineated." Katz v. United States, supra, 88 S.Ct. at 514.
Among the identified exceptions is the one relied on in this case to justify the warrantless search of defendant's truck, the "automobile exception." In Robbins v. California, supra, the Court stated that a warrant is unnecessary under the "automobile exception" "`where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained.' Chambers v. Maroney, [399 U.S. 42] 90 S.Ct. 1975 [26 L.Ed.2d 419]." In other words, there must be a combination of probable cause coupled with exigent circumstances. State v. Nieto, 395 So.2d 733 (La.1981).
This Court has defined exigent circumstances as those which render the obtaining of a warrant impracticable due to the possiblity that valuable evidence may be lost during the interim necessary to procure the warrant. State v. Spencer, 374 So.2d 1195 (La.1979); State v. Wilkins, 364 So.2d 934 (La.1978). In the present case, while there was probable cause to search the truck, there were no exigent circumstances present to justify the immediate search without the officer first obtaining a warrant.
The probable cause for the search was supplied by the officer's testimony that he had been telephoned the morning of the search by an informant who told the officer that the defendant would have marijuana in his truck that day. The informer told the officer that the defendant had told the *919 informer to bring money with him to work that day and that the defendant would sell him some marijuana. The officer testified that this informant had given him information in the past that had led to several arrests and convictions establishing the informant's credibility and reliability. However, this credible and reliable source also told the officer that it was defendant's usual practice to sell the marijuana from his truck in the parking lot after work. The informant made the call to the officer at about 5:30 a. m. Defendant was to begin a routine day-long work shift at 6:30 or 7:00 that morning. The truck would be left locked in the parking lot for the entire day. Therefore, the officer had the entire day to obtain the search warrant without the risk that the "evidence may be lost during the interim necessary to procure a warrant." There were simply no circumstances involved in this case that made the officer's obtaining a warrant prior to the search impracticable.
Since there were no exigent circumstances to justify this search under the "automobile exception" to the warrant requirement, nor any other facts that would justify it, the search was in violation of the Fourth Amendment to the United States Constitution and the evidence illegally seized should be suppressed. For these reasons, I dissent.
NOTES
[1] The deputy testified that the informant provided information which solved about 15 burglaries in DeSoto Parish and between 70 to 80 burglaries in other parishes in the area. The informant had also supplied accurate information in connection with a previous drug case.
[2] The fact that defendant would normally not leave work for several hours and that the informant advised that defendant normally disposed of marijuana after work does not render unreasonable the decision to act immediately. The officers were not required to risk detection and possible destruction of the evidence by a prolonged surveillance. Nor were they required to assume defendant would not place the marijuana in his Playmate lunch box for possible distribution at the worksite.

The officers' action in this case was vastly different from that of officers who observe suspected contraband, but wait until it is placed in an automobile, arguably for the purpose of creating exigent circumstances.
[3] In cases of searches of automobiles the Supreme Court of the United States and this court have held that officers acting with probable cause may stop and search moving vehicles. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1924); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); State v. Tant, 278 So.2d 458 (La.1974). This position has been adopted, despite the usual preference for a judicial determination of probable cause prior to a search, in part because of the diminished expectation of privacy in an automobile and in part because of the inherent mobility of the automobile. When probable cause exists, the courts have not required officers merely to stop vehicles and detain them pending the issuance of a search warrant. Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975).

The Sanders decision discussed and recognized that the societal cost of an inflexible requirement to obtain a warrant to search a legally stopped automobile outweighed the value of presenting probable cause to a neutral magistrate, stating:
"In Chambers, if the Court had required seizure and holding of the vehicle, it would have imposed a constitutional requirement upon police departments of all sizes around the country to have available the people and equipment necessary to transport impounded automobiles to some central location until warrants could be secured. Moreover, once seized automobiles were taken from the highway the police would be responsible for providing some appropriate location where they could be kept, with due regard to the safety of vehicles and their contents, until a magistrate rules on the application for a warrant. Such a constitutional requirement therefore would have imposed severe, even impossible, burdens on many police departments." 442 U.S. at 765, 99 S.Ct. at 2594.
[4] Justice Powell said in pertinent part:

"The dissenters argue, with some justice, that the controlling question should be the scope of the automobile exception to the warrant requirement. In their view, when the police have probable cause to search an automobile, rather than only to search a particular container that fortuitously is located in it, the exigencies that allow the police to search the entire automobile without a warrant support the warrantless search of every container found therein. See post, at 2859 & n. 13 (STEVENS, J., dissenting). This analysis is entirely consistent with the holdings in Chadwick and Sanders, neither of which is an "automobile case," because the police had probable cause to search the double-locked footlocker and the suitcase respectively before either came near an automobile. See Chadwick, supra [433 U.S. 1] at 11 [97 S.Ct. 2476, at 2483]; Sanders, supra, [442 U.S. 753] at 761 [99 S.Ct. 2586 at 2592]; see also id. at 766 [99 S.Ct. at 2594] (BURGER, C. J., concurring). Adoption of the dissenters' view would require, however, rejection of a good deal of the reasoning in the latter case.
"Resolving this case by expanding the scope of the automobile exception is attractive not so much for its logical virtue, but because it may provide ground for agreement by a majority of the presently fractured Court on an approach that would give more specific guidance to police and courts in this recurring situationone that has lead to incessant litigation. I note, however, that this benefit would not be realized fully, as courts may find themselves deciding when probable cause ripened, or whether suspicion focused on the container or on the car in which it traveled.
"The parties have not pressed this argument in this case and it is late in the Term for us to undertake sua sponte reconsiderations of basic doctrines. Given these constraints, I adhere to statements in Sanders that the fact that the container was seized from an automobile is irrelevant to the question whether a warrant is needed to search its contents. Some future cases affording an opportunity for more thorough consideration of the basic principles at risk may offer some better, if more radical, solution to the confusion that infects this benighted area of the law." 453 U.S. at ___ - ___, 101 S.Ct. 2850-2851.
[5] In Sanders Chief Justice Burger pointed out:

"The breadth of the Court's opinion and its repeated references to the `automobile' from which respondent's suitcase was seized at the time of his arrest, however, might lead the reader to believeas the dissenters apparently dothat this case involves the `automobile' exception to the warrant requirement. See ante, [442 U.S. 753] at 762-765, and n.14 [99 S.Ct. 2586, at 2592-2593, and n.14]. It does not. Here, as in Chadwick, it was the luggage being transported by respondent at the time of his arrest, not the automobile in which it was being carried, that was the suspected locus of the contraband. The relationship between the automobile and the contraband was purely coincidental, as in Chadwick. The fact that the suitcase was resting in the trunk of the automobile at the time of respondent's arrest does not turn this into an `automobile' exception case. The Court need say no more.
"This case simply does not present the question of whether a warrant is required before opening luggage when the police have probable cause to believe contraband is located somewhere in the vehicle, but when they do not know whether, for example, it is inside a piece of luggage in the trunk, in the glove compartment, or concealed in some part of the car's structure." 442 U.S. at 767, 99 S.Ct. at 2595.
[6] At the hearing on the motion to suppress the state proved that defendant was given a booklet of company regulations which clearly provided that lunch boxes and vehicles brought onto the job site would be searched from time to time on an unscheduled basis. The state proved that such searches by company security officers were conducted for the purpose of controlling narcotics and theft. Company policy prohibited all narcotics from being brought on the premises and made special provisions for drugs prescribed by a physician. In cases of prescription drugs special work assignments were often made. The state offered into evidence a statement signed by defendant acknowledging his awareness of these regulations and agreeing to comply with them as a condition of employment. The signed statement came from defendant's personnel file.

The state also proved that a large sign appeared on the guard gate with the following language: "NOTICE. ALL VEHICLES OF PERSONNEL ENTERING OR LEAVING THE PREMISES SUBJECT TO SEARCH."
[7] Since we have distinguished this case from Robbins on the basis of being an "automobile exception" case, rather than a "container" case, and being a case of significantly diminished expectation of privacy, it is not necessary to address the retroactivity of Robbins. The Robbins plurality considered that decision an application, rather than an extension, of Sanders and Chadwick.

However, newly announced prophylactic rules extending the exclusionary rule to enforce Fourth Amendment principles have not been given retroactive effect. In United States v. Peltier, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1971) the Court noted that the deterrent purposes of the exclusionary rule are not furthered by suppressing fruits of good faith actions taken in reliance on existing standards. See also United States v. Williams, 622 F.2d 830 (5th Cir. 1980). In Peltier, the Court said:
"It is indisputable ... that in every case in which the court has addressed the retroactivity problem in the context of the exclusionary rule, whereby concededly relevant evidence is excluded in order to enforce a constitutional guarantee that does not relate to the integrity of the fact finding process, the court has concluded that any such new constitutional principle would be accorded only prospective application." 422 U.S. at 535, 95 S.Ct. at 2316. (Emphasis supplied.)
See also Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), holding that Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), was not to be given retroactive effect.
Thus, if Robbins announced a new constitutional principle or extended a previously announced exclusionary rule, the search in this case, occurring on February 6, 1981, would not be governed by principles and standards announced in Robbins on July 1, 1981.