412 So.2d 1329 (1982)
STATE of Louisiana
v.
William B. CUNNINGHAM.
No. 81-KA-1865.
Supreme Court of Louisiana.
April 5, 1982.
Rehearing Denied May 14, 1982.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Don C. Burns, Dist. Atty., Russell Woodard, Asst. Dist. Atty., for plaintiff-appellee.
Thomas W. Davenport, Jr., Davenport, Files, Kelly & Marsh, Monroe, for defendant-appellant.
*1330 MELVIN A. SHORTESS, Justice Ad Hoc[*].
Defendant William B. Cunningham was charged by bill of information filed June 10, 1980, with possession of a controlled, dangerous substance, to-wit: marijuana, with intent to distribute, a violation of La.R.S. 40:967. A motion to suppress the evidence was filed on October 14, 1980. After the trial court denied this motion, defendant pleaded guilty as charged, reserving his right to appellate review of the denial of his motion to suppress. State v. Crosby, 338 So.2d 586 (La.1976). The trial court accepted the plea and sentenced defendant to serve two years at hard labor and to pay a fine of $1,000.00 plus court costs, in default thereof, to serve 120 days in the Parish jail.
The two-year prison term was suspended and defendant was placed on supervised probation for three years. As a special condition of probation, he was sentenced to serve one year at the Ouachita Area Multi-Parish Prison. Defendant appeals, alleging as error the trial court's denial of his motion to suppress. The defendant contends that certain evidence was illegally obtained during a search of his automobile, particularly the trunk area.
FACTS
On Sunday, March 23, 1980, Trooper Dennis D. Ledbetter of the Louisiana State Police, working in Caldwell Parish, received a tip from a confidential informant that William Bruce Cunningham, Jr., was his drug supplier and that he lived in West Monroe, Louisiana. The informant stated that he was overdue to call defendant and volunteered to contact him and arrange for a delivery of more drugs to Caldwell Parish. At some time between noon and 3:00 p. m., Ledbetter contacted Trooper Johnny Paine at his home in Monroe, Louisiana. He advised Paine of the narcotics transaction he believed would take place and requested Paine to come to the Sheriff's office in Columbia, Louisiana.
The informant told the officers that the defendant lived on Harmon Street in West Monroe and drove a dark green Dodge or Plymouth. Paine then contacted Trooper Randy Beckham and West Monroe Police Detective Bobby Smith and requested that they verify the address and car description given by the informant. This initial information was confirmed some time either prior to or directly after the informant phoned Cunningham to set up the delivery.
At approximately 4:22 p. m., the confidential informant, in the presence of Paine and Ledbetter, telephoned West Monroe and spoke to the defendant. The informant advised defendant that he could come to Caldwell Parish to pick up money that had been collected from previous sales and to deliver more drugs. The defendant agreed to bring the drugs, immediately. Ledbetter testified that he believes he attempted to contact the judge but could not get an answer. He stated that he felt he did not have enough time to go look for someone, because it was a Sunday afternoon, and the vehicle might soon be entering Caldwell Parish. Paine testified that the entire telephone conversation between informant and defendant was recorded and that he played the entire tape before leaving the courthouse. Paine further requested that Trooper Beckham and Detective Smith in Monroe continue their surveillance of defendant at his home and follow him into Caldwell Parish.
Ledbetter and another deputy then left the courthouse and proceeded toward the Ouachita Parish boundary line. Paine also proceeded to the Parish line in his unmarked vehicle. Beckham and Smith, coming from Monroe, informed the other officers by radio that defendant had left his residence and was proceeding toward Columbia in a green, 1975 four-door Dodge with a temporary license in the rear window.
At approximately 5:25 p. m., Ledbetter observed the defendant's vehicle after it *1331 entered Caldwell Parish on Highway 165. He pulled the vehicle over, using his red light, while Paine pulled off the road in front of the vehicle. The officers from Monroe also arrived at the scene. Paine identified himself to defendant and advised him that he was going to search his vehicle, "under the authority of the Carroll Doctrine," and gave defendant his Miranda warnings. The defendant had, at this time, stepped out of his vehicle. Beckham immediately got the keys from the ignition and opened the trunk of defendant's automobile. Ledbetter was standing at the trunk with Beckham and testified that when the trunk was opened, he observed two boxes in the trunk compartment. He stated that each box contained zip-lock bags of suspected marijuana. The officers then arrested the defendant.
ISSUE NO. 1
The first issue in this case is whether the officers acted within constitutional limits in stopping defendant on a public road and conducting a warrantless search and seizure of his vehicle.
The Fourth Amendment of the U. S. Constitution and Article 1, Section 5, of the Louisiana Constitution protects citizens against unreasonable searches and seizures. Warrantless seizures are per se unreasonable. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Guzman, 362 So.2d 744 (La.1978). In the absence of a warrant, the State has the burden of proving that the search falls within one of the few well-delineated exceptions to the warrant requirement.
The exception urged by the State is outlined by the U. S. Supreme Court in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). This exception to the warrant requirement is known as the "automobile emergency exception." For a warrantless search to be upheld under this exception, Carroll and its progeny require that two conditions be met:
... (1) there must be probable cause to believe that the vehicle contained contraband or evidence of a crime; and (2) there must be "exigent circumstances" requiring an immediate warrantless search, i.e., the impracticability of obtaining a warrant due to the possibility that the car could be moved either by its occupants, if not arrested, or by someone else. An immediate warrantless search is, therefore, constitutionally permissible when "the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained." State v. Guzman, supra, 362 So.2d at 748, citing Chambers v. Maroney, 399 U.S. 42 at 51, 90 S.Ct. 1975 at 1981, 26 L.Ed.2d 419 at 428 (1970).
The officers here had obtained certain information from a confidential informant. They had a general description of the car, an address, and the informant's word that defendant was a drug supplier. A drug transaction was arranged by telephone in the presence of the officers, and the defendant agreed to bring the drugs immediately. At this point the officers were forced to act quickly if they were to take full advantage of this valuable information. There is mention of an attempt to contact the judge by telephone, but there was no answer. It was a Sunday afternoon, so the judge may have been harder to locate. But at this point, the officers were not certain that the defendant would follow through with the arranged drug sale. From the time the phone call by the informant was made, to the time when defendant was stopped and his car searched, only a little over one hour had elapsed. At some point, the officers from Caldwell Parish made radio contact with the officers from Monroe. The investigation was continued by cooperation from both law enforcement agencies. The officers waited until defendant entered Caldwell Parish and neared the point of delivery before pulling him over. Paine testified that when the vehicle entered Caldwell Parish he felt that there were more facts to support a probable cause determination, because at that point the automobile had arrived where it was expected. The vehicle was pulled over to the side of a public highway on a Sunday afternoon. The defendant was immediately alerted by Paine *1332 that his car would be searched. He was not placed under arrest until the marijuana was seized. Therefore, he would have been free to leave and to destroy any contraband in his vehicle had the officers left to get a search warrant.
The defendant argues that once the vehicle was detained and the officers were present, exigent circumstances did not exist, and a search warrant should have been sought. In State v. Guzman, supra, which has strikingly similar facts, the defendant made the same argument, and this court gave the following response:
There is substantial merit in the contention that police must obtain a search warrant for an automobile when they can do so without jeopardizing the contraband sought, but neither this court nor the United States Supreme Court has made that requirement. Although a search may be a greater intrusion into privacy than the sequestration, immobilization, impoundment or detention of the thing to be searched, and although a detached magistrate should be better able than the police to decide whether probable cause to search exists, the sequestration is itself a seizure. The validity of both seizures and searches is measured by the same constitutional standards. It would require an extension of constitutional law to permit the police to seize without a warrant, and then forbid them to search the thing seized unless a warrant is first obtained. 362 So.2d at 749.
In Guzman, the defendant was also pulled over on Highway 165 after a drug transaction was arranged through the cooperation of police officers and a communications worker. The officers possessed substantial information about a shipment of heroin. This court, however, felt that the officers were correct in concluding that their suspicion ripened into probable cause only when the ongoing investigation had progressed to a point where the defendant was identified as an occupant of the suspected car traveling on Highway 165. The search and seizure of the automobile in Guzman was held valid under the "automobile exception."
In State v. Tant, 287 So.2d 458 (La.1973), there was a 24-hour delay from the time the officers were informed that the defendant's vehicle contained drugs to the time of the subsequent search. The officers had chosen to place the car under surveillance and became concerned when it seemed that it might escape their jurisdiction. The court in Tant stated:
It is not unreasonable, and accordingly it is permissible for police to exercise discretion in not immediately obtaining a search warrant in numerous hypothetical circumstances among which is the effort to uncover further violations of the law. This is in keeping with the general aims and needs of law enforcement. Furthermore, by purposely imposing this restraint, the police afford themselves more time to gather information with which to convince an impartial magistrate that a search warrant should issue. 287 So.2d at 461.
A four-hour delay from the time a van departed from Dallas, Texas, to the time it was stopped and searched in Lincoln Parish, Louisiana, did not invalidate the search of the van on the grounds that the police should have obtained a warrant. State v. Hearn, 340 So.2d 1365 (La.1976). The facts in Hearn show that the officers acted on an informant's tip and did not feel that they had probable cause until the information they had received was confirmed by the vehicle's entrance into Lincoln Parish. The officer with the information that perhaps would have supported a search warrant was an integral part of the ongoing operation. The court found the surveillance was piecemeal and that all of the officers involved did not have complete information.
The delay in the present case was a little more than one hour. The officers herein were forced to respond quickly to confirm the information supplied by their informant. In good faith they waited for defendant to enter Caldwell Parish. Therefore, our review of the record, in light of the prior jurisprudence, reveals that there was probable cause and exigent circumstances to justify the warrantless search and seizure of defendant's vehicle.
*1333 ISSUE NO. 2
Although we find that the warrantless search of the vehicle was justified under the "automobile emergency exception," a second issue remains as to the constitutionality of the "search" and seizure of the boxes found within the trunk.
The State contends that the marijuana, contained in the two boxes located in the interior of the trunk, was in plain view. The officers had prior justification for opening the trunk, i.e., the automobile exception. If they inadvertently discovered the marijuana and it was immediately apparent without close inspection that this was contraband, then the "plain view" doctrine would operate to clothe the seizure with constitutionality. Robbins v. California, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981); Coolidge v. New Hampshire, supra, State v. Parker, 355 So.2d 900 (La.1978). The only evidence in the record to support the State's position is the testimony of one of the two officers standing at the trunk when it was opened. Trooper Ledbetter testified:
At that time Trooper Beckham removed the keys from the ignition and opened the trunk of the vehicle, which was the place where our informant said Mr. Cunningham usually carried the narcotics. As the trunk was opened, I was at the rear of the car and I observed two boxes. Each of them contained zip lock bags of which was suspected marijuana. (Tr. p. 16).
The defendant correctly states that an exception to the warrant requirement is never presumed. When a warrantless search is involved, the State must prove that an exception is applicable. Article 703(D) of the Louisiana Code of Criminal Procedure provides in pertinent part:
... the State shall have the burden of proving the admissibility ... of any evidence seized without a warrant.
Due to the paucity of evidence in the record, we are not prepared to find that the "plain view" doctrine is operative in this case to justify the seizure of the two boxes containing marijuana.
Nevertheless, the search and seizure of the boxes may be justified on other constitutional grounds. In Robbins, supra, the U. S. Supreme Court was confronted with the search of a container in the course of an automobile search. The defendant in Robbins was pulled over by police officers for erratic driving. The police approached the vehicle and smelled marijuana smoke as the defendant stepped out of his car. They searched the station wagon and found in the luggage compartment two packages wrapped in green opaque plastic.[1] The officers then unwrapped the packages and found two bricks of marijuana.
Robbins was a plurality decision in which four U. S. Supreme Court justices held that the packages were protected by the Fourth Amendment, and their search and seizure was illegal. The Robbins court expressed concern for the "... reasonable expectation of privacy," surrounding closed containers and refused to allow circumvention of the warrant requirement by the use of the automobile exception.
In recent years we have twice been confronted with the suggestion that this "automobile exception" somehow justifies the warrantless search of a closed container found inside an automobile. Each time, the court has refused to accept the suggestion. 101 S.Ct. at 2845.
In earlier cases, the U. S. Supreme Court had found warrantless searches of certain containers unconstitutional. Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 *1334 L.Ed.2d 235 (1979) (luggage); U. S. v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (footlocker). The court in Robbins felt these cases were controlling:
[The Fourth] Amendment protects people and their effects, and it protects those effects whether they are "personal" or "impersonal." The contents of Chadwick's footlocker and Sanders' suitcase were immune from a warrantless search because they had been placed within a closed, opaque container and because Chadwick and Sanders had thereby reasonably "manifested an expectation that the contents would remain free from public examination." United States v. Chadwick, supra, 433 U.S. at 11, 97 S.Ct. at 2483.
Once placed within such a container, a diary and a dishpan are equally protected by the Fourth Amendment. 101 S.Ct. at 2846.
Therefore, since the defendant in Robbins had carefully wrapped and sealed the container in green opaque plastic, he too had manifested a reasonable expectation of privacy in the contents of the container. Once a container is surrounded with such an expectation, it may not be searched absent a warrant.[2]
State v. Hernandez, 408 So.2d 911 (No. 81-K-1669) was decided by this court on December 14, 1981. Hernandez involved a tip from an informant who told the police that the defendant would be bringing marijuana in his truck to a Brown and Root Construction site to sell at work. The truck was adequately described, including the license number. The police were told that the defendant would have the marijuana somewhere under the seat of the truck. The police went straight to the construction site, after being called at 5:30 in the morning, to meet the defendant on arrival. They obtained the assistance of the chief of security at the site. A lawful search of the truck revealed a plastic Tupperware container in the cab of the truck behind the front seat. The security chief removed it from the vehicle. Upon opening the Tupperware container, the officers found the suspected marijuana, and the defendant was arrested.
In Hernandez, we found that the search and seizure of the car and the Tupperware container were valid. The Tupperware was found to be a container:
... lawfully seized during the lawful search of the automobile, which [was] reasonably likely to contain contraband.
Furthermore, the defendant in Hernandez had signed a company form authorizing the security officers to search all vehicles and their contents which were in the company parking lot for the purpose of discovering controlled dangerous substances. These two circumstances helped us conclude that the defendant could not have reasonably expected that the contents of the Tupperware container were to be shielded from the public view. Therefore, the Tupperware container was not protected by the Fourth Amendment from a warrantless search and seizure.
In United States v. Neumann, 585 F.2d 355 (8th Cir. 1978), the Eighth Circuit of the U. S. Court of Appeals was called on to determine the validity of a search of a closed, but otherwise unsealed department store box. The box was found sitting on the floorboard of an automobile. The court held that the search was valid:
This court is of the opinion that the warrant requirement in Chadwick should not be extended to the facts of this case. There is simply an insufficient expectation of privacy in an unsecured cardboard box sitting in plain view in the passenger compartment of an automobile.
The central focus of our determination in the present case must be, "What expectation of privacy surrounded these containers?" The officers had constitutional *1335 authority to open the trunk under the Carroll doctrine. The boxes themselves were within plain view once the trunk was opened. No testimony was elicited as to the size or shape of the boxes, or whether they were closed or sealed in any specific manner; but the facts and circumstances at hand gave the officers probable cause to believe that said boxes contained contraband. Hernandez, supra. We are of the opinion that these boxes were not surrounded with a sufficient expectation of privacy so as to be clothed with Fourth Amendment protection.
Therefore, we conclude that the search and seizure of the automobile, along with the search and seizure of the boxes found within the trunk, were within constitutional limits. The trial court's denial of the motion to suppress is affirmed.
AFFIRMED.
DENNIS, J., dissents with reasons.
LEMMON, J., concurs and assigns reasons.
DENNIS, Justice, dissenting.
I respectfully dissent.
The majority's attempt to distinguish the present case from Robbins v. California, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), is unsuccessful. In Robbins, the high court specifically addressed the government's contention that there is a constitutional distinction "between pieces of sturdy luggage, like suitcases, and flimsier containers like cardboard boxes," 101 S.Ct. at 2845, and that the nature of a container may diminish the constitutional protection to which it otherwise would be entitled. The court rejected this argument because 1) it has no basis in the language or meaning of the Fourth Amendment and 2) because it is virtually impossible to perceive any objective criteria by which the task might be accomplished. The majority concedes that the state has not met its burden of proving that the warrantless search of the cardboard boxes is justified by one of the narrow exceptions to the warrant requirement. The motion to suppress, therefore, should have been granted.
LEMMON, Justice, concurring.
The officers had probable cause to believe there was marijuana somewhere in the vehicle, although the probable cause information did not focus on any particular place or container in the vehicle. Therefore, this is an "automobile" case and not a "container" case. State v. Hernandez, 408 So.2d 911 (La.1981).
NOTES
[*] Judges Melvin A. Shortess, Burrell J. Carter, and Felix H. Savoie, Jr., of the First Circuit Court of Appeal participated in this decision as associate justices ad hoc, joined by Associate Justices Dennis, Blanche, Watson and Lemmon.
[1] "The package visible in the photograph is apparently wrapped or boxed in an opaque material covered by an outer wrapping of transparent, cellophane-type plastic. (The photograph is not in color and the `green' plastic cannot be seen at all.) Both wrappings are sealed on the outside with at least one strip of opaque tape. As thus wrapped and sealed, the package roughly resembles an oversized, extra-long cigar box with slightly rounded corners and edges. It bears no legend or other written indicia supporting any interference concerning its contents." Robbins, supra, 101 S.Ct. at 2844, footnote 1 citing 103 Cal.App.3d 34 at 44, 162 Cal.Rptr. 780 (Rattigan, J., dissenting).
[2] There are certain well-delineated exceptions to the warrant requirement. When the contents of a package or container are exposed to "plain view," there is no need for a warrant. Likewise, when a container so clearly announces its contents, whether by its distinctive configuration, its transparency, or otherwise, that its contents are obvious to the observer, then no warrant is necessary. Robbins, supra, 101 S.Ct. at 2846, 2847.