438 So.2d 1269 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Gregory CORMIER, and Michael Owen, Defendants-Appellants.
No. K83-179.
Court of Appeal of Louisiana, Third Circuit.
October 12, 1983.
Writ Denied December 16, 1983.
*1271 Jim Ortego, Lloyd Keith Milam, Lake Charles, for defendants-appellants.
Robert R. Bryant, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before STOKER, LABORDE and KNOLL, JJ.
LABORDE, Judge.
Defendants, Gregory Cormier and Michael Owen, were jointly and formally charged by grand jury indictment with attempted second degree murder, aggravated crime against nature and armed robbery. LSA-R.S. 14:27, R.S. 14:30.1, R.S. 14:89.1(2) and R.S. 14:64. Both defendants entered a plea of not guilty to all charges and filed a motion to suppress tangible evidence obtained in the course of an alleged unconstitutional search. The trial court denied the motion and the defendants sought writs to this court seeking a reversal of the trial court ruling. We denied the writ. Subsequently, the Supreme Court, 435 So.2d 454, granted writs setting aside the ruling of this court and remanded the case to this court for briefing, argument and an opinion. After a thorough review we conclude that the trial court ruling was correct. Hence, defendants' writ is denied.

FACTS
At approximately 1:30 a.m. on October 14, 1982, Lt. McCann of the Sulphur Police Department received a call that a woman had been beaten, stabbed, sexually assaulted and robbed by two men. Speaking through her son at the hospital, the victim identified one of her assailants as the "Owens boy". The son told Lt. McCann that at one time Owens resided with Carl Evans in a trailer on North Crocker Street in Sulphur. Acting on this information, the lieutenant sent Officer Johnson and his partner to Evans' trailer to ascertain whether Evans knew where Owens could be found. At approximately 2:30 a.m. the officers arrived at the trailer and immediately noticed someone peering out of a window. Officer Johnson knocked on the front door and beckoned in a loud voice for the occupants to answer, but got no reply. Lt. Carroll knocked on the trailer door, identified himself as a police officer, but was equally unsuccessful in rousing the occupants. Lt. Carroll returned to Lt. McCann after instructing Officer Johnson and his partner to watch the trailer's two doors and allow no one to leave the premises. McCann sent him back to the trailer with instructions to enter if no one responded to his knocking. Lt. Carroll was unable to get a response and at approximately 3:00 a.m. he and the other officers made a warrantless entry into the trailer.
What transpired next is the subject of conflicting testimony. The state maintains that the officers awakened the occupants from their slumber and in the process discovered the presence of the two suspects, defendants Owen and Cormier. They contend that no searches or arrests were made until after Carl Evans signed a consent form to search the premises, approximately 45 minutes after the entry. Everyone in the trailer was arrested after a search yielded a small amount of marijuana and several items missing from the victim's residence.
Defendants' version of the incident is somewhat different. They contend that after the police entered the trailer and discovered their presence, everyone inside was arrested including the owner Evans. They assert that the police conducted a limited search of their persons and the immediate area before Evans signed the consent form 45 minutes later at 3:45 a.m.
The defendants' assignment of error presents two (2) issues for our determination:
(1) Whether the defendants were adversely affected within the meaning *1272 of our constitution and have standing to challenge the constitutionality of the search and seizure, and;
(2) Whether the warrantless entry into Carl Evans' trailer and subsequent search and seizure was in violation of defendants' United States Fourth Amendment and Louisiana Article I, sec. 5, constitutional rights?
ISSUE # 1
The threshold inquiry with any constitutional challenge to a search and seizure is whether the accused enjoyed a Fourth Amendment/Art. I, § 5 interest.[1] For without such, he has no standing to object. To demonstrate this interest, defendant must show that he had a reasonable expectation of privacy which society deems worthy of protection and that he was adversely affected by the search and seizure. State v. Ragsdale, 381 So.2d 492 (La.1980); LSA-Const. art. I, § 5 (1974).
In determining whether defendants Owen and Cormier had a Fourth Amendment/Art. I, § 5 interest, we note the following facts:
The search and seizure occurred inside the private residence of a third party, Carl Evans. It resulted from a purely investigatory effort by the police to locate the defendant, Owens. The police had good cause to make inquiry with Carl Evans concerning the whereabouts of Owens, since Owens reportedly resided with Evans "at one time". Carl Evans could have refused to cooperate with the police when approached, but instead consented to a search of his home to absolve himself from suspicion of the police. The search revealed the presence of the defendants and the incriminating tangible evidence which the defendants seek to suppress.
The test for determining whether one has a reasonable expectation of privacy is not only whether the person had an actual or subjective expectation of privacy, but also whether that expectation is of a type which society at large is prepared to recognize as being reasonable. State v. Ragsdale, supra. In this instance, we find that neither of the defendants have shown, nor is there evidence which tends to show that they possessed a reasonable expectation of privacy which society deems worthy of protecting. The defendants did not have a protectable privacy interest while transiently at the home of Carl Evans, a third party, to the extent that they have standing to object to reasonable inquiries made by the police upon the owner of the trailer. Within the meaning of Article I, sec. 5 of our constitution, the defendants are without standing to challenge the constitutionality of the search and seizure since they are not "adversely affected". It was the trailer owner's constitutional rights that were allegedly infringed upon, rather than defendants'. Should defendants have standing in this case they would effectively be allowed to complain of an alleged unreasonable search upon a third party. We will not allow defendants to assert alleged unconstitutional acts committed upon third parties in order that they might suppress otherwise competent evidence.
In State v. Barrett, 408 So.2d 903 (La. 1981), the Louisiana Supreme Court was presented with a case placing at issue the proper construction of the term "adversely affected" in Article I, sec. 5 of our constitution. In Barrett, supra, the police arrested the subject of an arrest warrant in the house of a third party without having obtained a search warrant to search the third party's home. The defendant objected to the warrantless entry and moved to suppress evidence obtained against him. In denying the motion to suppress, the court held:
"Therefore, the narrow issue presented for our determination is whether, within the meaning and purpose of our constitutional provision, the subject of an arrest warrant in the house of a third person *1273 where entry was accomplished without a search warrant or exigent circumstances or consent, was `adversely affected' so as to require suppression of evidence seized incidental to his lawful arrest. We think not."
Despite the fact that an accused may be prejudiced by illegally obtained evidence, he may not have standing to object unless he is "adversely affected" within the meaning of the fourth amendment of the United States Constitution and Article I, section 5 of the Constitution of Louisiana. Since there is no evidence tending to show that defendants had a proprietary or possessory interest in the premises searched, or a reasonable expectation of privacy which society deems worthy of protection, we conclude that the defendants were not adversely affected.[2] For this reason they are without standing to challenge the constitutionality of the search and seizure.
ISSUE # 2
Essentially, the defendants argue that the state failed to prove that the warrantless entry and search of the trailer was either freely and voluntarily consented to or secured through a recognized exception to the rule requiring that a warrant be obtained before entry and search of a dwelling house.
The United States and Louisiana Constitutions afford a person protection against unreasonable searches and seizures by requiring that the police obtain a warrant supported by probable cause before they conduct a search or seizure. U.S. Const.Amend. IV; La. Const. art. I, § 5 (1974); State v. Keller, 403 So.2d 693 (La. 1981). Probable cause exists when facts within the officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a reasonable man in the belief that the place to be searched will contain the object of the search (a suspect or contraband). Ragsdale, supra at 495.
Once the accused has demonstrated that he was subjected to a warrantless search or seizure, the state bears the burden of justifying the intrusion as one of the narrowly defined exceptions to the warrant requirement. State v. Cunningham, 412 So.2d 1329 (La.1982). The exceptions include where the police are in "hot pursuit" of a suspect, or where there is a danger of destruction of evidence. State v. Hathaway, 411 So.2d 1074 (La.1982). These exceptions, also known as exigent circumstances, will justify a warrantless search and seizure only if the police had probable cause and if obtaining a warrant was truly impractical. Cunningham, supra at 1331; Hathaway, supra at 1079.
The constitutional right to be secure against Fourth Amendment/Art. I § 5 intrusions may be waived. When an individual consents to a search, this constitutes one of the well recognized exceptions to the warrant requirement, as well as, the requirement of probable cause. Ragsdale, supra at 497. Any person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected can authorize a search of those premises. State v. Bodley, 394 So.2d 584 (La.1981). A consent to search made after an illegal entry is valid only if the circumstances indicate that it was free and voluntary and not an exploitation of the illegality. Ragsdale, supra at 497. In resolving this issue we consider whether the officers informed the defendant of his right to refuse permission to search; the temporal proximity between the initial intrusion and the consent; the presence of intervening circumstances; and the purpose and flagrancy of the official misconduct. Ragsdale, supra at 497. A valid consent will effectively waive not only the "consenter's" rights against unreasonable search and seizures *1274 but also the rights of any other person(s) who might have been adversely affected. Through retrospective application, the waiver can validate searches or seizures that occurred before the consent was granted. As the Supreme Court noted in State v. Williams, 353 So.2d 1299 (La.1977) at 1305:
"The consent ... is not only a consent to future searches and seizures, but it amounts to a waiver of the warrant requirement with respect to the search previously conducted."
The facts in Williams, supra, indicate that the police searched the defendant's home and impounded his automobile without a warrant. Defendant was arrested and taken to the stationhouse where he signed a consent form authorizing the police to search his home and car. The court held in Williams, supra at 1305:
"... [E]ven if the initial entry into defendant's house and impoundment of his automobile resulted in a warrantless search or seizure, the subsequent voluntary, written consent to search a second time amounted to a waiver of the warrant requirement rendering both the first and second search and seizures valid."
Fourth Amendment/Art. I, § 5 violations are abrogated by invocation of the "exclusionary rule" which mandates that evidence obtained pursuant to an unreasonable search and seizure cannot be used at trial. State v. Davis, 375 So.2d 69 (La.1979).
Defendants have presented a very persuasive argument that the search and seizures conducted in the Evans trailer cannot be justified under any theory of "exigent circumstances." The record does not support the state's contention that the officers had probable cause to believe defendants were inside the trailer, nor does the record reflect that obtaining a search warrant was impractical because there was a danger of destruction of evidence. On the contrary, the testimony of the police officers indicates that they did not believe that the defendants were actually inside the trailer when they decided to enter. Their only motive appears to have been to locate and question Carl Evans about the defendants' whereabouts. Lt. McCann initially testified that there was no probable cause to believe defendants were inside the trailer but then recanted on re-direct examination and stated that he suspected Michael Owen was inside. The only basis for such belief, however, appears to be the information that he received from the victim's son.
More persuasive is the state's assertion that the entry and subsequent search was justified by a valid consent. The record indicates that at 3:45 a.m., Carl Evans, the owner of the trailer, signed a consent form authorizing the police to search the trailer. The form was signed inside the trailer, approximately 45 minutes after the entry. The officers testified that Evans was not under arrest at the time he consented nor was he subjected to any threats or promises. Their testimony reveals that Evans was warned at least on one occasion that he was under no obligation to consent.
It is important to note that the police entry into the Evans trailer was not intended as a fishing expedition for evidence of general criminal activity. On the contrary, they were investigating a particularly brutal crime and had been led to believe that Carl Evans could help resolve the case. The officers testified that they conducted no searches and made no arrests until after the consent form was signed.
There is nothing in the record to support defendants' assertion that the consent was the product of coercion. All factors considered, the record indicates that Carl Evans freely and voluntarily consented to the search of his trailer. Therefore, in light of the Williams decision, supra, it can be said that the consent validated the search and seizures which followed and the warrantless entry and any search of the premises that occurred prior thereto.
The consent justified the officers' presence inside the trailer. Therefore, upon observing the defendants, the officers acted properly in arresting them without an arrest warrant. State v. Wichers, 392 So.2d 419 (La.1981). A search of defendants' persons was valid as a search incident to an *1275 arrest. It is of no consequence that the defendants may not have been technically under arrest at the time the personal searches were conducted for as the Supreme Court stated in State v. Melton, 412 So.2d 1065 (La.1982):
"If an arrest is justified before the search, it is not unreasonable for the search to be made before instead of after the arrest ... When there is probable cause but no formal arrest, a limited search to preserve evidence is justified."
We conclude that Issue # 2 is resolved in favor of the state since defendants' assignment of error lacks merit.
For the reasons stated above, we find that the trial court ruling on the motion to suppress was proper. Therefore, defendants' writ is denied.
WRIT DENIED.
NOTES
[1] United States Constitution, Amendment IV and Louisiana Constitution Article I, Section 5, respectively.
[2] United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). Automatic standing rule of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) was overruled by Salvucci. Standing depends on legitimate proprietary and/or possessory interest, or an expectation of privacy in the invaded place. Also see Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).