381 So.2d 492 (1980)
STATE of Louisiana
v.
Stephen RAGSDALE.
No. 65764.
Supreme Court of Louisiana.
March 3, 1980.
*493 Jeanette G. Garrett, New Orleans, Caddo Parish Indigent Defender Office, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul J. Carmouche, Dist. Atty., Ronald R. Inderbitzin, Asst. Dist. Atty., for plaintiff-appellee.
BLANCHE, Justice.[*]
Defendant, Stephen Ragsdale, was charged by bill of information with possession of methamphetamine in violation of La.R.S. 40:967. He pleaded not guilty and filed a motion to suppress the introduction of the methamphetamine into evidence on the basis that it was obtained by means of an illegal search and seizure. Following the trial court's denial of the motion to suppress, defendant withdrew his plea of not guilty and entered a plea of guilty, reserving his right to appeal the trial court's ruling on the motion to suppress. The trial judge subsequently sentenced defendant to eighteen months at hard labor.
*494 I. FACTS.
The following facts were ascertained at the hearing on the motion to suppress. In 1977, the defendant was convicted of possession of marijuana with intent to distribute. His sentence of five years was suspended, and he was placed on probation on the condition that he undergo drug treatment at a facility in New Orleans. Defendant absconded, and as a result, a warrant was issued for his arrest.
In September, 1978, a confidential informer told a Probation Officer Wyche that defendant had a girlfriend named Cindy Light who lived in Shreveport. Ms. Light was interviewed and admitted knowing defendant, but claimed she no longer associated with him.
In April, 1979, Probation Officer Wyche again spoke with the confidential informer. The informer stated that the defendant was staying in Bossier City with a Mr. Hawthorne. On the following day, the informer told Wyche that defendant might be staying at the Southside Villa Apartments with a man named "Scott" who drove a red, dirty-looking Volkswagen.
The evening, Probation Officer Wyche and plain-clothes Shreveport policemen followed Ms. Light from her place of employment. She drove past the Southside Villa Apartments into a housing subdivision, doubled back, and entered the Southside Villa Apartments. None of the officers saw what apartment she entered.
After this observation, Detective Wyche, Probation Officer Wyche's brother, spoke with the confidential informer at an unspecified location. The informer again stated that defendant was possibly staying at the Southside Villa Apartments with a friend named "Scott" who drove a red Volkswagen. The police officers subsequently searched for and found a red Volkswagen in the parking lot. A check on the Volkswagen's registration showed that it belonged to a Scott Geist, who resided in the Southside Villa Apartments. They then obtained Scott Geist's apartment number from the apartment manager.
The officers decided to knock on Scott Geist's apartment door, but first sent Officer McGaha to guard the rear exit because the confidential informer had said defendant might have a sawed-off shotgun, and the officers feared a violent confrontation. The rear door of the apartment opened onto a patio which was completely enclosed by a wooden fence with a wooden gate. Officer McGaha testified that he lifted the gate's latch and entered into the patio purportedly because he was afraid he would be in danger if someone from the apartment entered the patio and saw him outside the fence. Once inside the patio, McGaha was able to see through an opening in the kitchen window's curtains and into the apartment. Based upon his familiarity with defendant's photograph, McGaha recognized the defendant sitting in the living room with Ms. Light. McGaha observed the defendant run from the living room area when the officers at the front knocked on the apartment's front door. McGaha left his post and informed the other officers, who were outside the door, of his observations.
Awakened by the officers' knocking, Scott Geist opened the front door and they entered the apartment. At the time, all officers had their guns drawn. After entering the apartment, the officers noticed drugs, which appeared to be methamphetamine, and drug paraphernalia openly displayed on the living room coffee table. Defective Wyche searched for the defendant and found him hiding in the bathroom behind the shower curtain. Wyche noticed two small, bloody puncture marks on defendant's forearm. A syringe was found on the bathroom floor.
The officers brought the defendant, Scott Geist, Ms. Light and a Ms. Devanguardia, who was also in the apartment, into the living room and advised them of their Miranda rights. A narcotics agent, Robert Scaif, arrived between ten and thirty minutes after the initial entry and again advised the four suspects of their rights. Scaif and another officer then took Scott Geist into the bedroom and requested that he sign a consent to search form. Geist agreed after he was told "It didn't make *495 any difference, I was going to search the place anyhow ... I'd just get a search warrant." During the subsequent search, police officers discovered marijuana seeds in a nightstand drawer, and more "crystal meth" in the refrigerator's freezer compartment. Based upon these facts, the trial court denied defendant's motion to suppress.
II. REQUIREMENTS FOR LEGAL SEIZURE OF THE METHAMPHETAMINE.
Defense counsel contends the methamphetamine was seized by means of an illegal search because the policemen's initial entry into Scott Geist's apartment to effect defendant's arrest was not based upon probable cause to believe defendant would be found within the apartment. It is clear that if the officers legally entered the apartment, the methamphetamine on the coffee table was properly seized because it was in plain view. Coolidge v. N. H., 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 564 (1971); State v. Pomes, 376 So.2d 133 (La.1979).
The question of what requirements must be met before policemen may conduct a search of a third person's private home for a suspect for whom they have a valid arrest warrant is res nova in Louisiana. Article 224 of the Louisiana Code of Criminal Procedure provides:
"In order to make an arrest, a peace officer, who has announced his authority and purpose, may break open an outer or inner door or window of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, where the person to be arrested is or is reasonably believed to be, if he is refused or otherwise obstructed from admittance. The peace officer need not announce his authority and purpose when to do so would imperil the arrest." (Emphasis added).
The United States and Louisiana Constitutions prohibit unreasonable searches and seizures. La.Const. art. 1, § 5 (1974); U.S.Const. amend. 4. As a general rule, police searches must be based upon probable cause. Draper v. U.S., 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); State v. Culotta, 343 So.2d 977 (La.1976); State v. Morgan, 376 So.2d 99 (La.1979); State v. Hearn, 340 So.2d 1365 (La.1976)
Probable cause for a search exists when facts within the officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a reasonable man in the belief that the place to be searched will contain the object of the search. State v. Boneventure (and Buchanan), 374 So.2d 1238 (La.1979); State v. Morgan, supra. Also, as a general rule, a warrantless search is, per se, unreasonable absent one of the well-delineated exceptions. State v. Lain, 347 So.2d 167 (La.1977); State v. Aguillard, 357 So.2d 535 (La.1978); Coolidge v. N. H., supra. The warrant is required to insure a prior judicial determination of probable cause for the search. Schmerber v. Calif., 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
Without deciding whether police must obtain a search warrant prior to searching a third person's home for a suspect for whom they have a valid arrest warrant,[1] we conclude *496 that the entry into Geist's residence was illegal because the officers did not have a reasonable belief, or probable cause to believe, that the defendant would be found in Geist's home as is required by C.Cr.P. art. 224 and by the Louisiana and United States Constitutional provisions prohibiting unreasonable searches and seizures. La.Const. art. 1, § 5 (1974); U.S.Const. amend. 4. Consequently, the methamphetamine must be excluded from introduction into evidence. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 1081 (1961); Weeks v. U.S. 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); State v. Matthews, 366 So.2d 1348 (La.1978); State v. Davis, 359 So.2d 986 (La.1978). Any other result raises the possibility of police use of the arrest warrant, with no limitation, as carte blanche to search any residence in which they may believe a suspect is hiding. Such arbitrary invasion of the privacy of a person's home is exactly what the constitutional prohibitions of unreasonable searches seeks to prevent. State v. Jones, 358 So.2d 1257 (La.1978).
III. DETERMINATION OF PROBABLE CAUSE FOR THE ENTRY.
It is well-settled that a finding of probable cause may be based upon the hearsay allegations of a confidential informer. State v. Paciera, 290 So.2d 681 (La.1974); State v. Wilkens, 364 So.2d 934 (La.1978); State v. Wilson, 366 So.2d 1328 (La.1978). In Paciera, this Court held:
"If we can deduce a rule from these cases, it is this: The affidavit submitted to the magistrate may be based entirely upon hearsay, but, if so, it must set forth underlying circumstances and details sufficient to provide a substantial factual basis by which the magistrate might find reliable both the informant and the information given by him. Factors which support the credibility of an un identified informant include prior accurate reports or any specific independent corroboration of the accuracy of the instant report. Factors which support the credibility of the information reported include (a) direct personal observation by the informant, or (b), if the informantion came indirectly to the informant, the reasons in sufficient factual detail for the magistrate to evaluate and credit the reliability both of the indirect source and of the indirectly-obtained information." (State v. Paciera, 290 So.2d at 685-686). See also State v. Smith, 350 So.2d 1178 (La.1977); State v. Linkletter, 286 So.2d 321 (La.1973).
These same principles should apply in cases where hearsay statements of a confidential informer form the basis of a warrantless search of a third party's residence for a suspect for which policemen have an arrest warrant.
In the instant case, Probation Officer Wyche and Detective Wyche testified that they did not know how the informer obtained his information. They did not know if the information was based upon the informer's direct personal observations or upon what someone had told him. The naked assertion of the informer was the only basis for the officer's belief that the defendant was in Scott Geist's apartment.
Although the officer's independent investigation corroborated some of the facts in the informer's story (e. g. that Ms. Light had associated with the defendant and that a person named Scott lived in Southside Villa Apartments and owned a red Volkswagen), it is important to note that none of the information about the defendant's relationship with Scott Geist was corroborated by police investigation. We believe that the informer's unsupported statements concerning defendant's location could not support a reasonable belief that defendant could be found in Scott Geist's apartment because the officers had no way of evaluating the reliability of the informer's information. State v. Paciera, supra.
The state argues that Officer McGaha's observation from inside the patio of the defendant sitting in Geist's apartment gave the officers reasonable grounds for entry into the apartment to arrest the defendant. *497 Resolution of this question turns on whether McGaha's entry into the patio violated any reasonable expectation of privacy of the defendant which is constitutionally protected. If defendant had a reasonable expectation of privacy, the constitutional provisions against unreasonable searches, La.Const. art. 1, § 5 (1974), U.S.Const. amend. 4, protect against this intrusion because it would be a search conducted without a warrant and without probable cause. Katz v. U.S., 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); State v. Lamartiniere, 362 So.2d 526 (La.1978).
The test for determining whether one has a reasonable expectation of privacy is not only whether the person had an actual or subjective expectation of privacy, but also whether that expectation is of a type which society at large is prepared to recognize as being reasonable. State v. Wilbourn, 364 So.2d 995 (La.1978); State v. Dupuis, 378 So.2d 934 (La.1979).
The patio which Officer McGaha entered was completely enclosed by a wooden fence. The slats which made up the fence were close enough to each other and tall enough so that the fence completely blocked any view into the apartment itself. In addition, closed curtains covered the window facing into the patio except for a narrow gap, the width of which is in dispute, through which the officer observed the defendant.
We conclude the defendant could reasonably have expected the enclosed patio to assure his privacy from public view. The officer's entry into that patio without a warrant and without probable cause violated defendant's constitutional right to privacy. La.Const. art. 1, § 5 (1974); U.S.Const. amend. 4; State v. Lamartiniere, supra; State v. Wilbourn, supra. Consequently, his observations from inside the patio cannot be the basis for probable cause to enter the apartment to arrest the defendant. State v. Lamartiniere, supra.
IV. VALIDITY OF GEIST'S "CONSENT".
The state also contends that even given an illegal entry into the apartment, the methamphetamine was properly seized because Scott Geist signed a consent to search form. Defense counsel counters that the consent was coerced.
Valid consent searches constitute one well-recognized exception to the requirement of a valid search warrant, and also to the requirement of probable cause. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Angel, 356 So.2d 986 (La.1978). Where a consent to search is obtained after an illegal detention or entry the issue is whether the post-arrest consent is the product of free will or the result of exploitation of the previous illegality. Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); State v. Mitchell, 360 So.2d 189 (La.1978). In deciding this issue, we have previously stated that:
"[T]he court should take into account not only whether the governmental officers adequately informed the accused that he need not comply with their request, but also the temporal proximity between the arrest and the act (consent) allegedly to be coerced, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct." State v. Mitchell, supra, at 360 So.2d 191.
At the time Scott Geist signed the consent form, approximately thirty minutes had elapsed since the initial police entry. He was already under arrest for drugs and drug paraphernalia found on the coffee table. This arrest followed an illegal entry into his apartment without probable cause and in violation of his constitutional right to be protected against unreasonable searches and seizures. While several officers stood as armed guards of the other suspects, two armed officers took Geist into the bedroom and requested that he sign the consent to search form. He was told that his failure to do so would not prevent the search since the officers would merely procure a search warrant. Given the fact that Geist was already under arrest for possession of drugs found as a result of an illegal *498 entry into his home and given that he was told that the officers could obtain a warrant regardless of his consent, we believe that Geist's consent to search was coerced through exploitation of the prior illegal entry.

DECREE
Accordingly, the conviction and sentence is reversed, the motion to suppress is granted, and the case is remanded for a new trial in accordance with law.
REVERSED AND REMANDED.
WATSON, J., dissents.
NOTES
[*] Chief Judge PAUL B. LANDRY, retired, participated in this decision as an Associate Justice Ad Hoc.
[1] Recent Federal cases have dealt with this issue. The Third Circuit has indicated that absent exigent circumstances, a search warrant must be obtained before searching a third party's home for a suspect for whom a valid arrest warrant has been issued. Government of Virgin Islands v. Gereau, 502 F.2d 914 (3d Cir. 1974), cert. denied 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975). The District of Columbia Circuit has reasoned that a search warrant is not needed as long as there is probable cause to believe the suspect is in the third party's residence. U.S. v. Brown, 151 U.S.App.D.C. 365, 467 F.2d 419 (U.S.App.D.C.1972). However, the Court in that case discussed exigent circumstances in its determination of the existence of probable cause. The Fifth Circuit has held that "in addition to probable cause to believe that the suspect is inside, there must be exigent circumstances to support an entry [without a search warrant] to make a warranted arrest in a third party's home." However, the Court concluded that, although the warrantless entry in that case was illegal, the drugs seized after the entry were still admissible into evidence because the arrest by warrant was valid. The drugs, which were in `plain view' were seized in a warrantless search incident to a lawful arrest. U.S. v. Cravero, 545 F.2d 406 (5th Cir. 1976).