994 So.2d 620 (2008)
STATE of Louisiana
v.
David Roy JARRELL.
No. 2007 KA 1720.
Court of Appeal of Louisiana, First Circuit.
September 12, 2008.
*624 Walter P. Reed, District Attorney, Covington, LA, Kathryn W. Landry, Attorney for the State, Baton Rouge, LA, for Appellee, State of Louisiana.
Gwendolyn K. Brown, Baton Rouge, LA, for Appellant, David Roy Jarrell.
Before CARTER, C.J., WHIPPLE and DOWNING, JJ.
DOWNING, J.
The defendant, David Roy Jarrell a/k/a David Dyess, was charged by bill of information # 352176 with one count of second-offense possession of marijuana, a violation of La. R.S. 40:966(C), and by bill of information # 352175 with one count of possession of oxycodone, a violation of La. R.S. 40:967(C). He pled not guilty to both charges. Following a jury trial, he was found guilty as charged on both charges. Thereafter, in connection with the conviction under bill of information # 352175, the State filed a habitual offender bill of information against the defendant alleging he was a third-felony habitual offender.[1] Pursuant to a plea agreement, the defendant agreed with the allegations of the habitual offender bill and was sentenced to eight years at hard labor. On the conviction under bill of information # 352176, he was sentenced to one year at hard labor to run concurrently with the sentence under bill of information # 352175. He now appeals, designating five assignments of error.

ASSIGNMENTS OF ERROR
1. The trial court erred by denying the defendant's motion to suppress evidence and statements.
2. The trial court erred by denying the motion to quash and/or dismiss the prosecution because it was not instituted in a timely fashion.
3. The trial court erred by overruling the defendant's objection to improper prejudicial comments made by the prosecutor and in failing to grant the defendant's motion for mistrial which he made after the prosecutor repeatedly referenced *625 and adduced evidence upon other acts allegedly committed by the defendant.
4. The trial court erred by consolidating the defendant's charges for trial.
5. The trial court erred by permitting the State to adduce irrelevant, prejudicial "expert" testimony regarding the "black market abuse of prescription medications and to make argument to the jury based upon that testimony."
For the following reasons, we affirm the conviction and sentence under bill of information # 352176, and the conviction, habitual offender adjudication, and sentence under bill of information # 352175.

FACTS
On May 9, 2002, after receiving an anonymous tip of narcotics activity at the house trailer where the defendant was living, St. Tammany Parish Deputies went to the trailer and knocked on the door. Marilyn Strahan opened the door and invited the police officers into the trailer. The defendant and Strahan consented to a search of the trailer. Strahan indicated that she and the defendant had a small quantity of marijuana in the trailer, but did not sell the marijuana. The defendant and Strahan accompanied a police officer to the bathroom of the trailer, and Strahan retrieved a bag of marijuana and surrendered it to the police. Thereafter, the police recovered a syringe, a spoon with apparent residue on it, and one-half of a pill of OxyContin[2] from the area where they had seen the defendant seated with two other men when they first entered the trailer. The defendant indicated that the OxyContin belonged to him, and he and his friends were getting ready to "shoot the OxyContin."

MOTION TO SUPPRESS EVIDENCE AND STATEMENTS
In assignment of error number 1, the defendant contends the trial court erred in denying the motion to suppress evidence and statements because the "knock and talk" in this case was a prohibited search under the Fourth Amendment.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution protect persons against unreasonable searches and seizures. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained. La.Code Crim. P. art. 703(A). The State has the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant. Article 703(D). The court's ruling on a motion to suppress the evidence is entitled to great weight, because the court had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Jones, 01-0908, p. 4 (La.App. 1 Cir. 11/8/02), 835 So.2d 703, 706.
"Knock and talk" investigation involves officers knocking on the door, identifying themselves as officers, asking to talk to the occupant about a criminal complaint, and eventually requesting permission to search the house. If successful, it allows police officers who lack probable cause to gain access to a house and conduct a search. Federal and state appellate courts that have considered the question, including the United States Court of Appeals *626 for the Seventh Circuit, have concluded that knock and talk procedure does not, per se, violate the Fourth Amendment. State v. Warren, 05-2248, p. 6 (La.2/22/07), 949 So.2d 1215, 1221-22.
Though the "knock and talk" procedure is not automatically violative of the Fourth Amendment, it can become so. The constitutional analysis begins with the knock on the door. The prevailing rule is that, absent a clear expression by the owner to the contrary, police officers, in the course of their official business, are permitted to approach one's dwelling and seek permission to question an occupant. Warren, 05-2248 at p. 6, 949 So.2d at 1222.
There is a clear distinction between the police detaining a suspect on the street as authorized by Article 215.1 of the Code of Criminal Procedure and the police knocking on a suspect's door. When stopped on the street, a suspect has no choice but to submit to the authority of the police. When the door is opened in response to a knock, it is the consent of the occupant to confront the caller. There is no compulsion, force or coercion involved in the latter situation. State v. Sanders, 374 So.2d 1186, 1188 (La.1979). A search conducted pursuant to consent is an exception to the requirements of both warrant and probable cause. State v. Johnson, 98-0264, p. 5 (La.App. 1 Cir. 12/28/98), 728 So.2d 885, 887.
It is well settled that for a confession or inculpatory statement to be admissible into evidence, the State must affirmatively show that it was freely and voluntarily given without influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La. R.S. 15:451. Additionally, the State must show that an accused who makes a statement or confession during custodial interrogation was first advised of his Miranda[3] rights. State v. Caples, 05-2517, p. 8 (La.App. 1 Cir. 6/9/06), 938 So.2d 147, 153, writ denied, 06-2466 (La.4/27/07), 955 So.2d 684.
The admissibility of a confession is, in the first instance, a question for the trial court; its conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession are accorded great weight and will not be overturned unless they are not supported by the evidence. Whether or not a showing of voluntariness has been made is analyzed on a case-by-case basis with regard to the facts and circumstances of each case. The trial court must consider the totality of the circumstances in deciding whether or not a confession is admissible. Caples, 05-2517 at p. 9, 938 So.2d at 153.
Prior to trial, the defendant moved to suppress the confession to be used against him on the bases that it was obtained as a result of unlawful arrest, that it was not given freely and voluntarily, and that it was obtained without the proper advice concerning the rights of the accused. Additionally, he moved to suppress the evidence to be used against him on the basis that it was obtained, acquired, and/or seized in contravention of his constitutional rights and without the applicability of a warrant exception. Following a hearing, the motions were denied.
At the hearing on the suppression motions,[4] the State presented testimony *627 from St. Tammany Parish Sheriff's Office Lieutenant Danny Culpepper. On May 9, 2002, Lieutenant Culpepper and Officers Mistretta and Swann went to the house trailer located at 36396 Sigrid Road in Slidell after anonymous complaints alleging narcotics activity at the trailer were made to the Sheriff's Office Tip Line. The police officers knocked on the door of the trailer, and Marilyn Strahan opened the door. Lt. Culpepper identified himself and asked Strahan if he could come inside and speak with her. Strahan agreed to let the police officers into the trailer.[5] Lt. Culpepper looked down the hallway to his right and saw the defendant and two other men sitting around a table. He also saw another woman in the living room. One of the men at the table appeared to throw something onto the table. All of the men at the table then stood up and approached the police officers. The defendant indicated he lived in the trailer along with Strahan.
Lt. Culpepper advised the defendant and Strahan of the complaints of possible narcotics activity at the trailer. He also advised the defendant and Strahan of their Miranda rights, explained the consent-to-search form to them, and advised them that they had a right to refuse to consent to a search. The defendant and Strahan indicated that they understood their rights, verbally consented to a search of the trailer, and also signed a written consent to search form.
Lt. Culpepper asked the defendant and Strahan if any weapons or narcotics were in the trailer. Strahan replied that they had a small quantity of marijuana in the trailer, but they did not sell the marijuana. The defendant agreed with Strahan's statement. Lt. Culpepper accompanied the defendant and Strahan to the bathroom where Strahan surrendered a quantity of marijuana to him. In the area where the defendant and the two other men had been seated, the police recovered a syringe, a spoon with apparent residue, and one-half of a pill of OxyContin. The defendant subsequently stated that the OxyContin belonged to him and he and the other men were "getting ready to shoot the half a pill of OxyContin.[6]
There was no abuse of discretion in the denial of the suppression motions. The marijuana was surrendered to the police after Strahan consented to the police entering the trailer[7] and after the defendant and Strahan consented to a search of the trailer. The OxyContin was similarly recovered pursuant to a consent search. Lastly, the defendant's admission of ownership of the OxyContin was given freely and voluntarily without influence of fear, duress, intimidation, menaces, threats, inducements, or promises following advice of Miranda rights. See Sanders, 374 So.2d at 1189 ("Defendant was free to refuse to open the door or to slam it shut once opened. His freedom of movement was never infringed upon and no search or seizure occurred except on the basis of defendant's voluntary actions.")
This assignment of error is without merit.

*628 UNTIMELY PROSECUTION
In assignment of error number 2, the defendant argues the State failed to prove that prosecution was timely instituted.
Except as otherwise provided in Louisiana Code of Criminal Procedure, Title XVII, Chapter 2 no trial shall be commenced in non-capital felony cases after two years from the date of institution of the prosecution. La.Code Crim. P. art. 578(A)(2). Second-offense possession of marijuana and possession of oxycodone are non-capital felony offenses. La. R.S. 40:966(E)(2); La. R.S. 40:967(C)(2).
The period of limitation established by Article 578 shall be interrupted if the defendant fails to appear at any proceeding pursuant to actual notice, proof of which appears of record. La.Code Crim. P. art. 579(A)(3). The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists. Article 579(B).
Once the accused shows that the State has failed to bring him to trial within the time period specified by Article 578, the State bears a heavy burden of demonstrating that either an interruption or a suspension of the time limit tolled prescription. State v. Morris, 99-3235, p. 1 (La.2/18/00), 755 So.2d 205 (per curiam).
On August 14, 2006, the defense moved to quash bills of information # 352176 and # 352175, arguing that the State had failed to commence trial within two years of the filing of the bills on August 19, 2002. At the hearing on the motion, the State set forth that, at arraignment on September 4, 2002, trial was initially set for October 28, 2002.[8] Thereafter, after the defendant failed to appear for pretrial on January 7, 2003, as well as trial on January 27, 2003, the court ordered his bond forfeited and issued an attachment for his arrest. The minutes reflect: on motion of the defense, trial was continued from October 13, 2003 to November 17, 2003; on motion of the defense, trial was continued from November 17, 2003 to January 26, 2004; the court continued the trial from January 26, 2004 to March 1, 2004; the court continued the trial from March 1, 2004 to March 5, 2004; the court continued the trial from March 5, 2004 to March 22, 2004; the court continued the trial from March 22, 2004 to March 24, 2004; the court continued the trial from March 24, 2004 to March 25, 2004; on motion of the defense, trial was continued from March 25, 2004 to May 3, 2004; and the court continued the trial from May 3, 2004 to May 5, 2004. On May 5, 2004, after the defendant failed to appear and defense counsel advised the court that he had been unable to locate the defendant, on motion of the State, the court granted a career criminal order for attachment and bail increase and ordered that the defendant be arrested. On May 22, 2006, the court continued the trial from that date until June 26, 2006. The court also continued the trial from June 26, 2006 to August 14, 2006, when trial commenced. The defense argued that the defendant had been within the court's jurisdiction, and it was within the State's ability to find and locate him. The trial court denied the motion to quash.
The bills of information were filed on August 19, 2002. Thus, the State originally had until August 19, 2004 to commence trial. The minute entry of October 28, 2002 indicates that the defendant received *629 notice in open court of the January 27, 2003 trial date. He failed to appear at that trial date. Therefore, the time limitation of Article 578(A)(2) was interrupted. La.Code Crim. P. art. 579(A)(3). The cause of interruption no longer existed and the time limitation of Article 578(A)(2) began to run anew when the defendant appeared in court on August 19, 2003. La. Code Crim. P. art. 579(B). The State then had until August 19, 2005 to commence trial. However, prior to the expiration of this delay, the Article 578(A)(2) time limitation was again interrupted when the defendant failed to appear for trial on May 5, 2004, after receiving notice in open court of that trial date on May 3, 2004. The cause of interruption no longer existed and the Article 578(A)(2) time limitation began to run anew when the defendant appeared in court on May 9, 2006. Article 579(B). Trial was timely commenced prior to May 9, 2008. See State v. Buckley, 02-1288, p. 8 (La.App. 3 Cir. 3/5/03), 839 So.2d 1193, 1199 ("In our view, a defendant who has chosen to ignore actual notice, should not receive any benefit from his action; by the same token, the State should not bear the burden of finding and re-serving (or arresting) such defendants[.]")
This assignment of error is without merit.

EVIDENCE OF THE DEFENDANT'S FAILURE TO APPEAR FOR TRIAL
In this assignment of error the defendant argues that the court erred in overruling his objections and motion for mistrial concerning his failure to appear for trial. He claims the argument and testimony were inadmissible under La. Code Evid. arts. 403 and 404(B)(1).
It is well settled that courts may not admit evidence of other crimes to show the defendant as a man of bad character who has acted in conformity with his bad character. Article 404(B)(1). Evidence of other crimes, wrongs, or acts committed by the defendant is generally inadmissible because of the substantial risk of grave prejudice to the defendant. The State may introduce evidence of other crimes, wrongs, or acts if it establishes an independent and relevant reason such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Article 404(B)(1). Upon request by the accused, the State must provide the defendant with notice and a hearing before trial if it intends to offer such evidence. Even when the other crimes evidence is offered for a purpose allowed under Article 404(B)(1), the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense. The State also bears the burden of proving that the defendant committed the other crimes, wrongs, or acts. State v. Rose, 06-0402, p. 12 (La.2/22/07), 949 So.2d 1236, 1243.
Although a defendant's prior bad acts may be relevant and otherwise admissible under La.Code Evid. art. 404(B)(1), the court must still balance the probative value of the evidence against its prejudicial effects before the evidence can be admitted. Article 403. Any inculpatory evidence is "prejudicial" to a defendant, especially when it is "probative" to a high degree. State v. Germain, 433 So.2d 110, 118 (La.1983). As used in the balancing test, "prejudicial" limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. Id. See also Old Chief v. United States, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997) ("The term `unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground *630 different from proof specific to the offense charged.") Rose, 06-0402 at p. 13, 949 So.2d at 1243-44.
As is pertinent here, La.Code Crim. P. art. 775, provides that a mistrial shall be ordered when prejudicial conduct in the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770. Upon motion of defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the district attorney, during trial or in argument, refers directly or indirectly to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. Article 770(2). A mistrial is a drastic remedy and should be granted only when the defendant suffers such substantial prejudice that he is deprived of any reasonable expectation of a fair trial. Determination of whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for a mistrial will not be disturbed on appeal without abuse of that discretion. State v. Berry, 95-1610, p. 7 (La.App. 1 Cir. 11/8/96), 684 So.2d 439, 449, writ denied, 97-0278 (La.10/10/97), 703 So.2d 603.
During the opening statement of the State, the defense made a general objection after the State advised the jury, "Each of the defendants was duly booked and the case was docketed for trial in early 2003. The defendant failed to appear and the judge issued an arrest warrant for him." Thereafter, the defense did not object when the State continued, "[The defendant] was subsequently attached and rearrested and the case was rescheduled for trial in late 2003. The defendant skipped bond and was attached. An arrest warrant went out for him again. The defendant was subsequently arrested in 2006 and was held with no bond, which results in him being present and being available for trial today."
During trial, the State called Veronica Felts-Frechou. She indicated part of her duties as Judge Knight's minute clerk included making entries into folders concerning what had taken place in Judge Knight's section of court. The State asked Felts-Frechou to explain the part of the record that indicated, on two previous trial settings, the defendant had not been present and had been attached. The defense stated, "I object[,]" and the court asked counsel to approach the bench. The court asked the State to explain the relevance of the question. The State argued that the information it was trying to get from Felts-Frechou would explain why the case was not tried sooner so the jury would not assume that the lack of prosecution of the case was due to a lack of diligence by the State. The State also argued that Felts-Frechou's testimony would explain why the memories of the police officers were not as succinct as they otherwise might have been. Lastly, the State argued Felts-Frechou's testimony was evidence of flight, which was germane to the jury's discussion of whether or not the defendant was guilty of the offenses.
The defense argued the proposed testimony did not concern evidence of flight because it concerned matters which did not occur on the date of the offenses. Additionally, the defense argued the proposed testimony would be getting into "other bad acts," and the defense indicated it would move for mistrial if the State continued the line of questioning.
The court accepted defense's argument concerning evidence of flight, and ruled to not allow any reference to flight, but would allow evidence to explain the *631 delay and would instruct the jury as to the limited purpose of the evidence.[9]
After trial resumed, the following colloquy occurred:
[State]: Ms. Felts, could you explain those two entries that you made in this case?
[Witness]: Yes. The first entry concerning an attachment was made January 27, 2003, where the defendant David Jarrell did not appear in open court and an attachment was issued for his arrest.
[State]: Let me turn your attention to May 5, 2004. Did you find a similar entry with regard to the defendant.
[Witness]: Yes, sir. On May 5, 2004, David Jarrell was scheduled to appear in open court. He failed to appear and an attachment was issued. Further, the State filed a career criminal and Motion and Order for an attachment and bail increase.
[Defense]: I'd ask for a mistrial.
[Court]: Ladies and gentlemen of the jury, the purpose of this testimony is not to indicate that the defendant is a bad character. The purpose of the testimony here is to make you aware of the reason this case is being tried four years after the fact. So you're not to consider this testimony for any other purpose.
. . .
[Court]: Motion for mistrial denied.
Here, as found by the trial court, the State had an independent and relevant reason for presenting evidence of the defendant's failure to appear for trial, i.e., to explain why the defendant was being tried on charges years after his alleged commission of the offenses. The defense attacked the memory of the State's witnesses at trial. The defense urged the jury to reject testimony that the defendant admitted the marijuana and oxycodone belonged to him, because of discrepancies between that testimony and the police report, prepared within days of the arrest, concerning whether the defendant's alleged confession occurred before or after the discovery of the drugs. Accordingly, the prejudicial effect to the defendant from evidence that he repeatedly failed to appear for trial did not rise to the level of undue prejudice when balanced against the probative value of the evidence, and there was no abuse of discretion in the denial of the motion for mistrial.
This assignment of error is without merit.

IMPROPER CONSOLIDATION
In assignment of error number 4, the defendant argues bills of information #352176 and #352175 were improperly consolidated for trial because the record does not reflect that the consolidation was made at his request. He further claims the consolidation prejudiced him by placing otherwise inadmissible evidence of his prior marijuana offense before the jury.
Consolidation of two or more criminal cases is governed by La.Code Crim. P. art. 706, which provides that "[u]pon motion of a defendant, or of all defendants if there are more than one, the *632 court may order two or more indictments consolidated for trial if the offenses and the defendants, if there are more than one, could have been joined in a single indictment." The provision has remained unchanged since the legislature added it to the Code of Criminal Procedure in the comprehensive 1966 revision, see 1966 La. Acts 310, although the legislature has since then considerably expanded the rules governing joinder of two or more criminal offenses in a single proceeding. The statute permits a defendant to intrude on the otherwise plenary discretion of the State to determine "whom, when, and how" to prosecute, La.Code Crim. P. art. 61, by moving the trial court to consolidate crimes the State has chosen to prosecute in separate cases.
Given Louisiana's broad joinder rules, however, Article 706 does not confer on a defendant a statutory right to hold the State to its initial charging decision that he alone may waive by moving for consolidation of the charges. Assuming the crimes are otherwise properly joined in a single prosecution as a matter of La. Code Crim. P. art. 493 or 493.2, the State may effect consolidation without the approval of the defendant or the court by filing a superseding indictment or by exercising its authority under La.Code Crim. P. art. 487 to make substantive amendments to an indictment at any time before the beginning of trial, subject to the defendant's right under Article 489 to move for a continuance if the amendment has led to his prejudice. State v. Crochet, 05-0123, pp. 3-5 (La.6/23/06), 931 So.2d 1083, 1085-86 (per curiam).
For purposes of appellate review, whether the claim involves misjoinder of offenses, prejudicial joinder, or improper consolidation, the defendant must show prejudice to establish that trial of two or more crimes in a single proceeding "affect[ed] his substantial rights." La. Code Crim. P. art. 921. The same considerations used by the trial court in determining whether prejudice may result from joinder can also be used to determine whether prejudice results from consolidation. Those considerations include whether the jury would be confused by the various charges; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. Crochet, 05-0123, pp. 5-6, 931 So.2d at 1086-87.
The defense filed two motions to quash and also made an "oral motion to quash"[10] in this case. None of these motions, however, objected to the consolidation of the bills of information. Absent a contemporaneous objection, the right to raise the issue of improper joinder or consolidation is waived. Article 841; State v. Mathews, 00-2115, p. 13 (La.App. 1 Cir. 9/28/01), 809 So.2d 1002, 1013. Accordingly, error in the consolidation of the bill of information was waived.
This assignment of error is without merit.

IMPROPER EXPERT TESTIMONY
In assignment of error number 5, the defendant argues the "so-called" expert testimony of Detective Mistretta should *633 have been excluded because it was irrelevant and more prejudicial than probative.
Relevant evidence is evidence which tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La.Code Evid. art. 401. All relevant evidence is admissible except as otherwise provided by positive law. Evidence which is not relevant is not admissible. See Article 402, Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or waste of time. Article 403.
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. La.Code Evid. art. 702.
Trial courts are vested with great discretion in determining the competence of expert witnesses, and rulings on the qualifications of an expert witness will not be disturbed unless there was an abuse of that discretion. A combination of specialized training, work experience, and practical application of the expert's knowledge can combine to demonstrate that the person is an expert; a person may qualify as an expert based upon experience alone. Berry, 95-1610 at p. 20, 684 So.2d at 456.
At trial, the State indicated it wished to qualify Slidell Police Officer Nicky Mistretta as an expert in the black market use of OxyContin. The defense objected on the basis of relevance, and the court overruled that objection.
Officer Mistretta had been a police officer since 1996. He had a college degree in criminal justice management, and began working in the area of narcotics in 2000. Over the previous six years, one hundred percent of his work had involved narcotics investigations, and he had also worked as a supervisor for part of that time. He had personally participated in over one thousand narcotics cases.
Officer Mistretta had debriefed and spoken with prescription pill abusers, and had also used them as confidential informants. He had discussed where they obtained their drugs and the prices that they paid for their black market pills. He had investigated pain management clinics and posed as an injured person to see whether or not the clinics would prescribe drugs to him. He had also supervised confidential informants purchasing pills from pain clinics. He had read periodicals and made himself aware of trends concerning how OxyContin and other pain drugs were crushed and injected and had seen the results of that type of drug abuse.
Officer Mistretta had also briefed himself concerning the prices and patterns of distribution of black market pills. He could recognize an OxyContin 10, 20, 40, or 80 by sight. He had rendered expert opinions to other law enforcement officers, as well as members of the bar, concerning whether or not certain pills had been legitimately prescribed and then sold on the black market. He conceded, however, that he had never previously been qualified as an expert in court.
The trial court accepted Officer Mistretta as an expert in the field of black market abuse of prescription medications. Thereafter, Officer Mistretta identified the pill recovered from the trailer as an 80 milligram OxyContin. He testified that OxyContin was a time-released, very powerful pain killer. He described how OxyContin pills made their way from legitimate prescriptions onto the black market.
*634 The defense objected when the State asked Officer Mistretta for the price of an OxyContin 80 arguing that the testimony would be prejudicial as the defendant was charged with simple possession, rather than distribution, of OxyContin. The court sustained the objection as to anything relative to distribution or selling. Officer Mistretta then indicated that OxyContin 80 could be purchased for between $50 and $60 per pill. He then described the process by which an OxyContin pill could be prepared for injection, i.e., the pill would be crushed into a spoon, melted with heat, and then drawn into a syringe. He indicated that injecting the drug into the body produced an immediate euphoria.
Officer Mistretta testified that he concluded that the spoon recovered from the trailer was used in the process of crushing and injecting OxyContin because of the apparent pill binder on the inside and signs of heating on the outside of the spoon. He indicated that the OxyContin pill, the residue, and the unused hypodermic were all consistent with what he knew about this type of black market pill abuse.
The trial court did not abuse its discretion in holding that Officer Mistretta's testimony was relevant and admissible. The defendant's ownership vel non of the OxyContin recovered from the trailer was the central fact at issue in this case. The defense claimed the State's case was based on guilt by association, and specifically denied that the defendant had confessed his ownership of the OxyContin recovered from the trailer. The State's theory was that not only had the defendant confessed his ownership of the OxyContin, he had further stated that the police had interrupted him and the other men around the table as they were about to "shoot the half a pill of Oxycontin." Officer Mistretta identified the OxyContin recovered from the trailer as a highly concentrated form of the drug and indicated that the spoon and unused hypodermic recovered from the trailer along with the OxyContin were consistent with the preparation of the drug for injection.
Officer Mistretta's testimony made the existence of the defendant's alleged statements more probable, and thus, was relevant. Further, the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or waste of time. There was also no abuse of discretion in the trial court's ruling that Officer Mistretta could testify as an expert witness. Officer Mistretta's specialized knowledge assisted the jury in understanding the evidence and determining facts.
This assignment of error is without merit.

DECREE
For the foregoing reasons, we affirm the conviction and sentence under Bill of Information # 352176, and we affirm the conviction, habitual offender adjudication, and sentence under Bill of Information # 352175.
CONVICTION AND SENTENCE AFFIRMED UNDER BILL OF INFORMATION # 352176; CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED UNDER BILL OF INFORMATION # 352175.
WHIPPLE, J., concurs and assigns reasons.
WHIPPLE, J., concurring.
I do not agree that the trial court could properly qualify an officer as an expert "in the field of black market abuse of prescription medications" as I question whether such a field of expertise exists under Daubert. However, to the extent his testimony *635 mainly showed the mechanics of Oxycontin injection, his testimony was proper.
NOTES
[1] Predicate # 1 was set forth as the defendant's conviction, under Twenty-Second Judicial District Court Docket # 186693, of possession of cocaine. Predicate # 2 was set forth as the defendant's conviction, under Marion County (Mississippi) Criminal District Court Docket # 43813, of burglary.
[2] OxyContin contains oxycodone. State v. Chambers, 05-1517, p. 4 n. 3 (La.App. 3 Cir. 5/24/06), 933 So.2d 200, 203 n. 3.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] In determining whether the rulings on the defendant's motion to suppress were correct, we are not limited to the evidence adduced at the hearing on the motions. We may also consider all pertinent evidence given at the trial of the ease. State v. Chopin, 372 So.2d 1222, 1223 n. 2 (La.1979).
[5] Lt. Culpepper testified he did not threaten, induce by promise, or coerce Strahan to get her to speak to him.
[6] Lt. Culpepper testified he did not threaten, induce by promise, or coerce the defendant in any way to obtain the statement from him. He also indicated that during the period between when he advised the defendant of his Miranda rights and when the defendant admitted ownership of the Oxycontin, the defendant neither indicated he wished to remain silent nor asked to have an attorney present nor revoked his consent to search.
[7] The defendant does not challenge Strahan's authority to allow the police to enter the trailer.
[8] The minutes of the arraignment indicate that trial was set for November 12, 2002. However, the next minute entry (October 28, 2002), indicates that the matter being on assignment for felony jury trial, on motion of the defense, the matter was continued until January 27, 2003.
[9] If the trial court erred in admitting this evidence, such admission was harmless error. And, "[t]he history of Louisiana's harmless error rule makes clear that there has been one common directive: appellate courts should not reverse convictions for errors unless the accused's substantial rights have been violated." State v. Leonard, 05-1382, p. 12 (La.6/16/06), 932 So.2d 660, 668. The Leonard court further instructed: "Of course, we caution prosecutors not to engage in deliberate misconduct with the expectation that such misconduct will later be deemed harmless error." Id., 05-1382 at p. 12 n. 9, 932 So.2d 660, 668 n. 9.
[10] La.Code Crim. P. art. 536 requires that a motion to quash be in writing. The substance of the oral motion to quash, however, was set forth in the August 14, 2006 motion to quash filed by the defense.