GUIDRY, J.
The defendant, William Gene Cox, Jr., was charged by bill of information with one count of possession of a schedule II controlled dangerous substance-hydromorphone (count 1), a violation of La. R.S. 40:967(C)(2), and one count of possession of a firearm or carrying a concealed weapon by a convicted felon (count 2), a violation of La. R.S. 14:95.1. He pled not guilty to both counts. Following a trial by jury, the defendant was found guilty as charged on both counts. On count 1, he was sentenced to five years at hard labor, and on count 2, he was sentenced to twenty years at hard labor.[1] The trial court ordered the sentences to run concurrently. The defendant now appeals, arguing that the trial court erred in denying his pre-trial motion to suppress. For the following reasons, we affirm the convictions and sentences.
STATEMENT OF FACTS
On August 20, 2016,[2] Sergeant Nick LoCicero of the Livingston Parish Sheriff's Office was conducting stationary traffic enforcement when around 7:15 p.m. he was approached by a man who identified himself as Rickey Boone. Boone was teary-eyed and appeared to have been pepper-sprayed. Boone told Sgt. LoCicero that he was involved in an altercation with William Cox, the defendant, at the defendant's residence after he went there in reference to a motorcycle that the defendant was supposed to return to him. The two became involved in a heated argument, and when Boone approached the defendant with a stick, the defendant pepper-sprayed him. Based on this account, Sgt. LoCicero believed that the defendant had acted in self-defense, but wanted to visit the defendant's residence to "get further details." Sgt. LoCicero was already familiar with the defendant's home because he had participated in searching it in 2014, which resulted in the seizure of illegal controlled dangerous substances and illegal firearms.
While Sgt. LoCicero was speaking with Boone, another individual named Jerry Valentine arrived on the road. Both Boone and Valentine complained about narcotic distribution from the defendant's home and expressed concern about his well-being because of his drug use. They stated that they had tried to help him, but he *600 "continue[d] to use drugs and take advantage of people." Sgt. LoCicero also received information from Livingston Parish Sheriff's Office Agent Carl Childers, who was investigating narcotic activity at the defendant's residence after he received complaints about the usage and sale of narcotics there. After speaking with Valentine, Sgt. LoCicero traveled to the defendant's home. At some point before entering the defendant's home, he also learned that a failure to appear warrant for a traffic offense had been issued for the defendant.
When he pulled into the driveway, Sgt. LoCicero noticed a number of vehicle parts and "junked vehicles" on the property. The defendant was not home, but Jami Odom, the defendant's girlfriend, arrived. Sgt. LoCicero spoke to her about the fight between Boone and the defendant, and she stated that an altercation had occurred between the two after Boone approached the defendant with a stick. The defendant then arrived and gave Sgt. LoCicero a similar account of the incident. Sgt. LoCicero believed that the defendant had acted in self-defense, but asked the defendant if anything was "going on" at the house regarding illegal narcotic activity. Both the defendant and Odom insisted that they were no longer using drugs, and Odom repeatedly stated that they were attending a methadone clinic. Odom did, however, indicate that she was in possession of marijuana. When Sgt. LoCicero asked to walk through the house, the defendant and Odom agreed and "escorted [him] inside."
Although the defendant was "adamant" that he was not using drugs and did not exhibit any impairment consistent with drug use, Sgt. LoCicero saw drug paraphernalia inside the house, specifically, shortened, cut straws with white powder residue and intravenous paraphernalia. He also saw ammunition and parts of weapons, which Sgt. LoCicero knew the defendant as a felon was prohibited from possessing. Sgt. LoCicero described all of these items as being "in plain view." Odom directed Sgt. LoCicero to the rear bedroom and gave him the marijuana she had placed there. Sgt. LoCicero then "presented [the defendant] with a search waiver at 8:23 p.m. -- Mr. Cox, as well as Ms. Odom -- and they signed giving me consent to search the residence." Sgt. LoCicero testified that he did not offer any inducements for them to sign the waiver or coerce them in any way to sign the form; he also informed them of their right to refuse. He believed that both were free of impairments or influences and understood that they had the right to refuse what they were signing.
Sergeant Brandon Ashford then arrived at the scene, and he and Sgt. LoCicero conducted a search of the defendant's home. They recovered drug paraphernalia, ammunition, parts of weapons, and a number of different types of firearms. They also discovered oxymorphone, a schedule II controlled dangerous substance, in the master bedroom of the home inside an open safe. When asked about the firearms, the defendant accused Boone of planting them in his attic to "get him in trouble." The ammunition recovered in the defendant's workroom, however, was consistent with these firearms.
At the hearing on the motion to suppress, the defendant testified and indicated that he recalled the events of that day only "somewhat" because he had been "doing some heroin" and was beaten with a stick during his altercation with Boone. He added that he might also have taken methadone that morning. He remembered returning to his home that day and seeing Sgt. LoCicero there, but did not remember inviting Sgt. LoCicero inside. He recalled *601 "signing something[,]" but was not wearing his glasses and did not know what he signed. He remembered, however, the following from that day: going to the methadone clinic; buying heroin from a dealer on Siegen Highway at a motel "between the Harley Davidson shop and the methadone clinic[;]" getting into an altercation with Boone over the motorcycle and using pepper spray on him; and going for a drive on his motorcycle after the altercation and refilling it with gas at a nearby Cracker Barrel. The defendant claimed he did not remember speaking to Sgt. LoCicero about his stash of Dilaudid in his home or what he told Sgt. LoCicero about the firearms found in his home.
MOTION TO SUPPRESS
In his sole assignment of error, the defendant contends that the trial court erred in denying his motion to suppress. Before trial, the defendant filed a motion to suppress the physical evidence the police recovered in his home. He argues that the items should not have been allowed into evidence because his and Odom's consent in signing the waiver was not free and voluntary, but an exploitation of the "constitutionally violative entry into defendant's home[.]"
The Fourth Amendment to the United States Constitution and Article I, section 5 of the Louisiana Constitution protect persons against unreasonable searches and seizures. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained. La. C.Cr.P. art. 703(A). The State has the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant. La. C.Cr.P. art. 703(D).
A three-tiered analysis governs the Fourth Amendment's application to interactions between citizens and police. At the first tier, mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention. State v. Spears, 14-0289 (La. App. 1st Cir. 9/19/14), 2014 WL 4668761, at *2 (unpublished), writ denied, 14-2172 (La. 5/22/15), 170 So.3d 983.
At the second tier, the investigatory stop recognized by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police officer may briefly seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts. Louisiana Code of Criminal Procedure article 215.1(A) provides that an officer's reasonable suspicion of crime allows a limited investigation of a person. Spears, 2014 WL 4668761, at *2.
Last, at the third tier, a custodial "arrest," the officer must have "probable cause" to believe that the person has committed a crime. Louisiana Code of Criminal Procedure article 213(A)(3) uses the phrase "reasonable cause." The "probable cause" or "reasonable cause" needed to make a full custodial arrest requires more than the "reasonable suspicion" needed for a brief investigatory stop. Spears, 2014 WL 4668761, at *3.
It is a basic principle of the United States Fourth Amendment that searches and seizures inside a home without a warrant are presumptively unreasonable. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. State v. Nixon, 13-1786 (La. App. 1st Cir. 5/22/14), 2014 WL 2159329, at *3 (unpublished). Searches and seizures conducted *602 outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions. Spears, 2014 WL 4668761, at *2.
One such exception to the search-warrant requirement is the plain-view exception. Two conditions must be satisfied to trigger the applicability of the doctrine: (1) there must be a prior justification for an intrusion into the protected area; and (2) it must be immediately apparent without close inspection that the items are evidence or contraband. "Immediately apparent" requires no more than probable cause to associate the property with criminal activity. Spears, 2014 WL 4668761, at *2.
A warrantless search is unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement. A search conducted with the subject's consent is a specifically established exception to both the warrant and probable cause requirements. When the State seeks to rely upon consent to justify a warrantless search, it also must demonstrate that the consent was freely and voluntarily given without coercion. The voluntariness of defendant's consent to search is a question of fact to be determined by the trial court under the facts and circumstances surrounding each case. State v. Latiolais, 563 So.2d 469, 472 (La. App. 1st Cir. 1990).
A trial court's ruling on a motion to suppress the evidence is entitled to great weight because the district court had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Jarrell, 07-1720, p. 4 (La. App. 1st Cir. 9/12/08), 994 So.2d 620, 625. Correspondingly, when a trial court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court's discretion, i.e., unless such ruling is not supported by the evidence. However, a trial court's legal findings are subject to a de novo standard of review. Spears, 2014 WL 4668761, at *3.
In the instant case, there was no error or clear abuse of discretion in the denial of the motion to suppress. Sgt. LoCicero spoke with Odom and the defendant outside the defendant's home regarding the scuffle between the defendant and Boone and simply asked for their accounts of the incident. Additionally, based on the complaints he received from Boone and Valentine regarding the defendant's drug use, the information from Agent Childers that drugs were being distributed from the defendant's home, and his own personal knowledge that illegal controlled dangerous substances had been previously seized from the defendant's home, Sgt. LoCicero asked the defendant if anything was "going on" at the house regarding illegal narcotic activity. We note also that Odom "volunteered" the fact that she was in possession of marijuana. Consequently, Sgt. LoCicero had an objectively reasonable suspicion, supported by specific and articulable facts, that the defendant was engaged in criminal conduct. See Spears, 2014 WL 4668761, at *3-4. (holding that information received from a tip that the defendant, a felon, was in possession of a firearm, the officers' confirmation of the defendant as a convicted felon, and the fact that the defendant's vehicle matched the tip were sufficient to justify the officers' belief that the defendant was a convicted felon in possession of a firearm).
Furthermore, when Sgt. LoCicero asked to walk through the house, the defendant and Odom not only agreed, but escorted him inside the home. Sgt. LoCicero observed "in plain view" shortened, cut straws with white powder residue and intravenous *603 paraphernalia, in addition to ammunition and parts of weapons, which Sgt. LoCicero knew that the defendant, as a felon, was prohibited from possessing.
Sgt. LoCicero also saw the defendant and Odom sign the search waiver form. He did not offer any incentives to them to sign the form, nor did he coerce them in any way. Additionally, they did not exhibit any impairments to make Sgt. LoCicero believe that they were incapable of understanding the significance of signing the form. Although the defendant testified that he had used heroin and possibly methadone earlier that day, Sgt. LoCicero's testimony indicated that the defendant was lucid and understood his right to refuse. The defendant remembered significant details from the day of the search and his arrest, despite his claims that he did not recall various interactions with Sgt. LoCicero. The record reflects that Sgt. LoCicero informed the defendant of his right to refuse and that the defendant's consent was free and voluntary when he agreed to sign the form. See Latiolais, 563 So.2d at 472-73 (holding that the defendant's consent was voluntary where a transcript of his statement indicated he was lucid and where the officer testified that no one threated, forced, or promised the defendant anything to sign the consent form); Jarrell, 07-1720 at 6-7, 994 So.2d at 627 (holding that the consent form was valid where the officer explained the form to the defendant and his girlfriend and advised them of their right to refuse to sign it, and where the defendant and his girlfriend indicated that they understood their rights, verbally consented to a search of their trailer, and signed a written consent to search form). Accordingly, we find that the trial court's denial of the defendant's motion to suppress was supported by the evidence.
The defendant relies on the case of State v. Ragsdale, 381 So.2d 492 (La. 1980) for the proposition that the entry into a home to conduct a search or to make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant supported by probable cause. The State correctly points out, however, that this case is inapposite. In Ragsdale, the officer entered an enclosed portion of the patio and observed the defendant sitting in his friend's living room. Ragsdale, 381 So.2d at 494. He purportedly entered this area of the patio because he was concerned that he would be in danger if someone from the apartment entered the patio and saw him outside the fence. Id. It was from this area that the officer observed the defendant and informed the other officers that the defendant was in the apartment. Id. When the officers knocked and the defendant's friend opened the door, the officers entered the apartment and observed methamphetamine and drug paraphernalia openly displayed on the coffee table. Id. The officers then presented the defendant's friend with a consent to search form after advising him of his Miranda rights and requested that he sign it. Id. He acquiesced after an officer told him that he would simply obtain a search warrant if he did not sign the form. Ragsdale, 381 So.2d at 494-95. The Louisiana Supreme Court ultimately ruled the methamphetamine inadmissible because the officers did not have a reasonable belief, or probable cause to believe, that the defendant would be found in his friend's home. Ragsdale, 381 So.2d at 496-97. Consequently, the Court also ruled that the defendant's friend's consent was invalid and coerced as an exploitation of the officers' prior illegal entry into his apartment. Ragsdale, 381 So.2d at 497-98.
In the instant case, Sgt. LoCicero did not illegally enter the defendant's home, as we have already determined. The defendant and Odom freely consented to his request to walk through the home; therefore, *604 Sgt. LoCicero was legally in the home when he observed the drug paraphernalia and the parts of weapons Thus, when Sgt. LoCicero asked the defendant and Odom to sign the consent form, Sgt. LoCicero did not use a previous illegal entry as a tactic to coerce their consent in signing the search waiver form. We find this case factually distinguishable from Ragsdale and therefore decline to follow Ragsdale.
This assignment of error is without merit.
REVIEW FOR ERROR
We note that our review for error is pursuant to La. C.Cr.P. art. 920, which provides that the only matters to be considered on appeal are errors designated in the assignment of errors and an "error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La. C.Cr.P. art. 920(2).
In sentencing on the possession of a firearm by a convicted felon conviction, the trial court failed to impose the mandatory fine of not less than one thousand dollars nor more than five thousand dollars. See La. R.S. 14:95.1(B). Although the failure to impose the fine is an error under La. C.Cr.P. art. 920(2), it certainly is not inherently prejudicial to the defendant. The trial court's failure to impose the fine was not raised by the State in either the trial court or on appeal. As such, we decline to correct the illegally lenient sentence. See State v. Price, 05-2514, pp. 18-22 (La. App. 1st Cir. 12/28/06), 952 So.2d 112, 123-25 (en banc), writ denied, 07-0130 (La. 2/22/08), 976 So.2d 1277.
CONVICTIONS AND SENTENCES AFFIRMED.

This sentence is deemed to be served without benefit of probation, parole, or suspension of sentence. See La. R.S. 15:301.1(A).

At the hearing for the motion to suppress, the prosecutor erroneously referred to the date of the incident as August 20, 2017; however, Sgt. LoCicero's testimony was consistent with the date of the offense listed on the bill of information, August 20, 2016.