# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-304

**STATE OF LOUISIANA**

**VERSUS**

**PHILLIP WAYNE RAINES**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 299,113
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of James T. Genovese, Shannon J. Gremillion, and John E. Conery, Judges.

**CONVICTION AND SENTENCE VACATED;
REMANDED.**

**James C. Downs**
**District Attorney–Ninth Judicial District Court**
**W.T. Armitage, Jr.**
**Assistant District Attorney**
**701 Murray Street**
**Alexandria, LA 71301**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Michael A. Brewer**
**Law Office of Michael A. Brewer**
**1330 Jackson St.**
**Alexandria, LA 71301**
**(318) 443-4006**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Phillip Wayne Raines**

**GREMILLION, Judge.**

Defendant, Phillip Raines, was charged by a bill of information with sexual battery, a violation of La.R.S. 14:43.1. Defendant was tried by jury and was found guilty as charged. The trial court sentenced Defendant to thirty months at hard labor, without the benefit of probation, parole, or suspension of sentence. For the following reasons, we vacate Defendant's conviction and sentence and remand to the trial court for further proceedings.

Twenty-three-year-old P.K. underwent an emergency procedure for appendicitis at Rapides Regional Medical Center in Alexandria, Louisiana. P.K. testified that the first time he awoke in the recovery room, he found Defendant standing over him with one hand on his thigh and the other hand rubbing the area of the incision. When he awoke the second time, Defendant was holding his penis with one hand and his testicles with the other hand, with a finger inserted into his rectum. P.K. said that the man was performing oral sex on him. P.K. stated that Defendant asked if his girlfriend did the same for him and if he had ever been with a man before. When Defendant asked him if he needed to urinate, P.K. saw an opportunity to get out of the hospital bed and run away. Defendant helped him sit up in the bed. P.K. then bolted out of the recovery room and ran out of a door to the outside.

P.K. testified that immediately outside of the door, he encountered a woman smoking a cigarette. She tried to take him back inside, but P.K. continued on around to the side of the hospital, where he knew the emergency room entrance was. At the reception desk, he asked for the security guard. P.K. told security that he had been raped. P.K. testified that he had never met Defendant before the incident. Although P.K. testified that he was perfectly clear-headed and was not

hallucinating, he admitted that after the police arrived, he had to be awakened several times to give them a statement of what occurred and that he gave his mother's address as his own address.

Defendant has perfected a timely appeal, wherein he alleges:

1. The trial court erred in denying a Motion to Suppress and a Motion in Limine.

2. The jury erred in convicting Phillip Raines of the Crime of Sexual Battery as there was insufficient evidence to support the conviction.

3. The trial court erred in denying a Motion for Mistrial.

4. The trial court erred in granting the State's Notice of Intent to Introduce Evidence of Other Crimes, Wrongs or Acts.

5. The trial court erred in imposing a thirty month sentence on the charge of Sexual Battery as the sentence is constitutionally excessive.

Because we have found that the trial court should have declared a mistrial, Defendant's assignments of error one, two, four, and five are rendered moot.

## FACTS AND PROCEDURAL HISTORY

Sexual battery is defined as:

[T]he intentional touching of the anus or genitals of the victim by the offender using an instrumentality or any part of the body of the offender, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, when any of the following occur:

(1) The offender acts without the consent of the victim.

La.R.S. 14:43.1(A)(1).

A portion of P.K.'s testimony of events was verified by the woman he encountered outside the hospital, Christine Tobey. Tobey, a nurse at the hospital, testified that he "looked very upset and very wide eyed" when she first saw him. P.K. told her that someone had sexually abused him. However, she also stated that patients are often confused when coming out from anesthesia. Donna Lemoine,

2

the coordinator in the emergency room the night of the incident, testified that P.K. kept repeating to her that he had been raped and wanted his mother and the police called.

David Rachal, a registered nurse, but at the time a technician who assisted at the hospital, testified that he was called into work the night of the incident to assist Defendant in caring for P.K. once he was moved to the recovery room. Rachal stated that P.K. woke up seemingly out of a dead sleep, confused and "talking out of his head," and then said to Defendant, "I'm sorry, you're not who I thought you were." Rachal testified that P.K. was confused and hysterical. He said that Defendant went to P.K., reassured him, and calmed him down. Rachal stated that when P.K. expressed pain, Defendant administered pain medication. Rachal described Defendant's actions as normal and appropriate. However, Rachal left the hospital once P.K. was settled because he had to return to work early that morning.

Two detectives testified for the State, Detective Ronnie Howard, an officer with the Alexandria City Police Department, and Detective Clyde Carmouche, an investigator for the Rapides Parish District Attorney's Office. Detective Howard conducted the interrogation of Defendant on the day of the incident. He stated that Defendant was very cooperative, waived his *Miranda* right to maintain silence and have counsel present, and consented to a DNA swab. He further told the jury that during the interview, Defendant told him that he had engaged in two same-sex relationships in high school and had been accused of inappropriate touching when he served in the military.

Detective Carmouche testified that Defendant called him early on the Monday morning after the incident and told him that he was being charged with sexual battery. After Detective Carmouche asked him what had happened to cause

3

the allegation, Detective Carmouche testified that Defendant told him that he had consensually masturbated P.K. because he had an erection, had placed his mouth on P.K.'s penis, and had penetrated P.K.'s anus with his finger. Defendant then said that he was not worried about having P.K.'s DNA on his hands because he was careful to wash thoroughly. Detective Carmouche stated that Defendant then asked him for a recommendation for an attorney. Detective Carmouche stated that he and Defendant were acquaintances from church and had worked together in the U.S. Marshal's Office several years prior. Detective Carmouche said that Defendant was well aware that he worked for the District Attorney's Office.

Defendant denied Detective Carmouche's rendition of the conversation. He denied that he used the words "erection" or "masturbation." He further stated that when he used the word "consent" he was referring to the fact that P.K. consented to Defendant helping him urinate into the urinal. Defendant testified that he told Detective Carmouche what P.K. had alleged he did, not what he actually did to P.K.

Defendant asserted that when P.K. began to wake up after the surgery, he was hysterical, disorientated, and in pain. He gave P.K. a dose of Fentanyl, a pain medication. P.K. kept mumbling about Defendant not being who he thought he was. P.K. woke up several times in pain, and Defendant gave him more doses of Fentanyl. Defendant stated that this much pain was atypical for someone who had a surgery like P.K.'s. At one point, P.K. complained of being nauseated so Defendant gave him a dose of Demerol, which contained the drug Phenergan. Defendant explained that he asked P.K. if he had to urinate because an extended bladder could cause pain. P.K. said he did, so Defendant put a urinal between his legs and, without using gloves, placed P.K.'s penis in the urinal. However, P.K.

4

could not urinate. Shortly thereafter, P.K. awoke again in pain, and Defendant asked him if he could urinate if he was standing up. P.K. said yes, so he helped P.K. to sit upright on the bed. When he turned his back to get tape to secure the IV in place, P.K. ran out of the recovery room.

Defendant told the jury that he was forty-seven years old, married, and had a twenty-three year old son who was a paramedic in Alexandria, a twenty-two-year-old son who was currently in Afghanistan with the army, and two young sons aged nine and seven. Defendant served in the military as a nurse corps officer for over twenty-five years. During this time, he worked for the U.S. Marshal's Office as a prisoner transportation nurse, where he had first met Detective Carmouche. After he retired from the service, he worked at various hospitals and eventually arrived at Rapides Regional Medical Center.

Michelle Vrana, who worked at the Northern Louisiana Criminalistic Laboratory, qualified as an expert in DNA analysis. She testified that she received a cheek swab from Defendant and two swabs from P.K.'s penis. She stated that none of Defendant's DNA was located on P.K.'s penis, nor was any of P.K.'s DNA found in Defendant's cheek swab.

Dr. Thomas Arnold, a medical toxicologist with the Louisiana State University Health Science Center in Shreveport, testified that he reviewed the hospital record regarding the drugs P.K. was given during and after the surgery. He stated that there were six entries of 50 mcg of Fentanyl administered after P.K. was in recovery, which were reasonable dosages for someone after abdominal surgery. He explained that Fentanyl was an opiate and can cause depressed mental alertness. Dr. Arnold stated that Demerol is a much stronger pain medication and not used much anymore. However, Demerol often nauseates a patient; therefore,

5

the Phenergan is used to combat the sickness. He described Phenergan as a "tough medication" which can cause hyper-excitability and hallucinations. Dr. Arnold agreed that the timing of the administration of Demerol with Phenergan, along with the Fentanyl, could well have caused a reaction "to such a degree that a person believes something is happening to him that is not in fact happening to him[.]"

The only direct evidence of a sexual battery was P.K.'s testimony, and P.K.'s mental state was in question. Defendant's DNA was not found on P.K.'s penis, nor was P.K.'s DNA found in Defendant's mouth. There was expert testimony that the combination and effects of the drugs given to P.K. could have caused confusion and hallucinations.

Rachal and Tobey, both nurses, testified that P.K. exhibited confused, irrational, and hallucinatory behavior. They testified that P.K.'s confused behavior was not uncommon considering the emergency surgery and the drugs he was administered following surgery. Dr. Arnold, an expert in medical toxicology, testified that the combination of drugs given to P.K. during and following surgery could have resulted in hyper-excitability and hallucinations and explained P.K.'s perceptions. Defendant's explanation of his conduct caring for a recovering patient in P.K.'s situation was reasonable.

## DISCUSSION

Two statements made one after the other by Detective Howard during trial violate the mandate of La.Code Evid. art. 404(B)(1), which prohibits the admission of "evidence of other crimes, wrongs, or acts. . . to prove the character of a person in order to show that he acted in conformity therewith."

6

Regarding the admissibility of other crimes evidence, in *State v. Jarrell*, 07-1720, pp. 10-11 (La.App. 1 Cir. 9/12/08), 994 So.2d 620, 629-30, the first circuit noted:

It is well settled that courts may not admit evidence of other crimes to show the defendant as a man of bad character who has acted in conformity with his bad character. Article 404(B)(1). Evidence of other crimes, wrongs, or acts committed by the defendant is generally inadmissible because of the substantial risk of grave prejudice to the defendant. The State may introduce evidence of other crimes, wrongs, or acts if it establishes an independent and relevant reason such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Article 404(B)(1). Upon request by the accused, the State must provide the defendant with notice and a hearing before trial if it intends to offer such evidence. Even when the other crimes evidence is offered for a purpose allowed under Article 404(B)(1), the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense. The State also bears the burden of proving that the defendant committed the other crimes, wrongs, or acts. *State v. Rose*, 06-0402, p. 12 (La.2/22/07), 949 So.2d 1236, 1243.

Although a defendant's prior bad acts may be relevant and otherwise admissible under La.Code Evid. art. 404(B)(1), the court must still balance the probative value of the evidence against its prejudicial effects before the evidence can be admitted. Article 403. Any inculpatory evidence is "prejudicial" to a defendant, especially when it is "probative" to a high degree. *State v. Germain*, 433 So.2d 110, 118 (La.1983). As used in the balancing test, "prejudicial" limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. *Id. See also Old Chief v. United States,* 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997) ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.") *Rose,* 06-0402 at p. 13, 949 So.2d at 1243-44.

As is pertinent here, La.Code Crim. P. art. 775, provides that a mistrial shall be ordered when prejudicial conduct in the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770. Upon motion of defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the district attorney, during trial or in argument, refers directly or indirectly to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. Article 770(2). A mistrial is a drastic remedy and should be granted

7

only when the defendant suffers such substantial prejudice that he is deprived of any reasonable expectation of a fair trial. Determination of whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for a mistrial will not be disturbed on appeal without abuse of that discretion. *State v. Berry*, 95-1610, p. 7 (La.App. 1 Cir. 11/8/96), 684 So.2d 439, 449, *writ denied*, 97-0278 (La.10/10/97), 703 So.2d 603.

The State filed a "768 Notice to Defendant" and a "Notice of Intent to Introduce Evidence of Other Crimes, Wrongs or Acts" regarding its intent to use a statement made to Detective Howard by Defendant during the interrogation. Detective Howard stated that Defendant had told him that he had engaged in two same-sex relationships in high school. At the hearing regarding the notice of intent, Defendant argued that the acts were not relevant to the current accusation. The trial court ruled that it was relevant and allowed the statement to be admitted into evidence by Detective Howard at trial.

At trial, however, Detective Howard testified as follows:

Q. Okay. Did you take a statement -- did he give you an oral statement first?

A. Yes, I spoke with him. I talked with him prior to taking the actual tape recorded statement from him. Because of the allegations made against him, I wanted to establish what kind of history he had and what kind of relationships he had been in. So, I . . .

Q. Did he, did he tell you what kind he had been in?

A. Yes, sir, he did.

Q. Tell us what he said.

A. He told me that he had had a same - - two same sex relationships in high school, and that, uh, he was actually accused of inappropriate touching; I believe it was, in the military.

Defendant objected to the additional statement regarding being accused of inappropriate touching in the military and moved for a mistrial. The State argued that it was surprised by the statement, and that an admonition to the jury to

8

disregard the statement would be sufficient. Defendant argued that the statement was "serious and grievous and prejudicial" to Defendant's right to a fair trial. The trial court, while noting that the comment was not admissible, agreed with the State that an admonishment was sufficient. The trial court advised the jury to disregard the statement about inappropriate touching in the military, stating that "once you have toothpaste in a tube and someone squeezes it out you can't get toothpaste back in a tube." The trial court then asked each juror if they could follow its instruction, and each juror replied affirmatively. Defendant objected to the trial court admonishing the jury rather than granting a mistrial.

Defendant argues, first, that it was error for the trial court to have allowed the admission of Detective Howard's testimony that Defendant told him he had two same-sex relationships in high school. This statement was not recorded during the interrogation or transcribed but only reported by Detective Howard. Second, Defendant argues that, coupled with the statement that he was accused of inappropriate touching in the military, the statement was so prejudicial as to deprive him of a fair trial.

In *State v. Grant,* 41,745, p. 14 (La.App. 2 Cir. 4/4/07), 954 So.2d 823, 834, *writ denied*, 07-1193 (La. 12/7/07), 969 So.2d 629, the second circuit noted:

> Admissibility of evidence of these prior acts has been succinctly set forth in *State v. Jackson*, 93-0424 (La.10/18/93), 625 So.2d 146, and the state is required to do the following when it seeks to present such evidence: (1) comply with the notice requirements and limiting instructions set out in *State v. Prieur*, [277 So.2d 126 (La.1973)] *supra*; (2) prove by clear and convincing evidence that the other act occurred and was committed by the defendant; (3) show that the evidence falls within one of the La. C.E. art. 404(B) exceptions to the general exclusionary rule and that this exception is relevant to the outcome of the case; and (4) show that the probative value of the evidence outweighs its potential prejudicial value. The trial court's ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion. *State v. Scales,* 93-2003

(La.5/22/95), 655 So.2d 1326, *cert. denied,* 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670.

At the hearing, the State told the trial court, "We do not believe that this is a bad act, or certainly a crime, but is relevant." This was the entirety of the State's argument. Defendant questioned the relevancy, but the trial court ruled, without reasons, that the statement was relevant and therefore admissible. As pointed out by Defendant, these two relationships occurred thirty years prior to the trial. There was nothing to indicate they were actually sexual acts or were not consensual. Defendant was not a nurse at the time, and any acts presumably were not committed while the other person was unconscious and in Defendant's care. Defendant alleges that "[t]his testimony was elicited for one reason and one reason only: to establish that Phil Raines engaged in homosexual conduct." Contrarily, the trial court ruled that the second statement, that Defendant was accused of inappropriate touching in the military, which indicated nonconsensual activity when he was a nurse, warranted admonition to the jury to disregard the statement. In *State v. Ventris,* 10-889, p. 23 (La.App. 5 Cir. 11/15/11), 79 So.3d 1108, 1124, it was said:

> Even when the other crimes evidence is offered for a purpose allowed under Article 404, the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defense. The probative value of the extraneous crimes evidence must outweigh its prejudicial effect. *See* La. C.E. art. 403; [*State v.*] *Jacobs,* [99-991 (La. 5/15/01), 803 So.2d 933, *cert. denied,* 534 U.S. 1087, 122 S.Ct. 826 (2002)] *supra.* The underlying policy is not to prevent prejudice, since evidence of other crimes is always prejudicial, but to protect against unfair prejudice when the evidence is only marginally relevant to the determination of guilt of the charged crime. *State v. Williams*, 02-645 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 507, *writ denied*, 02-3182 (La.4/25/03), 842 So.2d 398.

We agree with Defendant. There was no relevance shown between the fact that Defendant had same-sex relationships in high school and the offense of which

10

he was accused. While the fact that Defendant had same sex-relationships as a teenager established only that he was attracted to males during his youth, the implication that he was accused of inappropriate touching in the military mentioned in the very next breath very well could have tainted the first statement, leading the jury to conclude Defendant has committed a succession of nonconsensual sexual acts against males.

This court in *State v. Willis*, 05-218 (La.App. 3 Cir. 11/2/05), 915 So.2d 365, *writ denied*, 06-186 (La. 6/23/06) 930 So.2d 973, *cert. denied*, 549 U.S. 1052, 127 S.Ct. 668 (2006), explained that the erroneous admission of other crimes evidence was subject to a harmless error analysis. Further, quoting *State v. Bell*, 99-3278, pp. 5-6 (La. 12/8/00), 776 So.2d 418, 421-22, this court noted:

> [t]he erroneous admission of other crimes evidence is subject to harmless error analysis under the standard set out in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See State v. Gibson,* 391 So.2d 421 (La.1980). Under *Chapman*, an appellate court must decide "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction," and "the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24, 87 S.Ct. 824.
>
> The *Chapman* standard was later refined in *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), as follows:
>
>> "Consistent with the jury-trial guarantee, the question [Chapman ] instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand. . . . The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." (emphasis in original).

11

*Willis,* 915 So.2d at 389.

The statements made by Detective Howard were extremely prejudicial to Defendant and cannot be found to be harmless error. These two statements tainted the jury's view of Defendant as a long-term same-sex sexual predator. We conclude that the trial court erred when it allowed Detective Howard to repeat Defendant's statement that he had engaged in same-sex relationships when he was in high school. Furthermore, this statement, coupled with Detective Howard's spontaneous and inadmissible statement that Defendant was accused of inappropriate touching while in the military, despite the admonition to disregard the statement, was unduly prejudicial and outweighed any probative value it may have had to the trial. Further, considering that the evidence against Defendant was not overwhelming, we can only find that these statements contributed to the jury's conviction of Defendant. Thus, we find that the trial court abused its discretion in failing to order a mistrial. Defendant was denied a fair trial. Accordingly, we vacate Defendant's conviction and sentence and remand to the trial court for further proceedings.

## DECREE

Defendant's conviction and sentence are vacated and the matter is remanded to the trial court for further proceedings.

**CONVICTION AND SENTENCE VACATED; REMANDED.**